GERMO et al. v. ZION'S BEN. BLDG. SOC. et al.

No. 5416. Decided December 31, 1934. (39 P. [2d] 312.)

*Backman & Backman,* of Salt Lake City, for appellants.

*E. D. Sorenson* and *Chris Mathison,* both of Salt Lake City, for respondents.

STRAUP, Chief Justice.

This case involves title to real property in Salt Lake City. The plaintiffs alleged they were the owners in fee simple and that the defendants claimed unfounded rights and interest in and to the property adverse to the plaintiffs, and alleged that they be required to set up their claimed rights and title and that they be adjudged unfounded and the title to the property quieted in the plaintiffs. The defendants T. N. Williams and the Zion's Benefit Building Society answered setting up their claimed rights adverse to the plaintiffs. The defendants Hoffman Brothers Loan & Trust Company and W. S. Booker, though duly served with sum-

mons, failed to appear and answer or otherwise plead to the complaint. The case was dismissed by the plaintiffs as against the defendant Anna M. Erhardt, she having died before the action was commenced.

The case in the main involves alleged conflicting claims between Bertha Germo and Zion's Benefit Building Society. It was tried to the court without a jury. Judgment was rendered in favor of the plaintiffs and against the defendants, from which judgment the Building Society and Williams appeal. The appeal is on the judgment roll without a bill of exceptions. The chief complaint is that on the facts found the court erred in rendering and entering judgment in favor of the Germos and should have rendered and entered a judgment in favor of the Building Society. We thus need refer to only so much of the substance of the findings as may be necessary to consider the ground upon which it is claimed the judgment should be reversed.

On and prior to July, 1920, Jane, Margaret, and Elizabeth Dunbar, heirs of the Dunbar estate, were the legal owners of the tract of land described in the complaint and findings. On July 10, 1920, they entered into a written contract with defendant Hoffman Brothers Loan & Trust Company to sell the land to it for $3,000 payable $30 a month and to convey the land by warranty deed to the company when such purchase price was fully paid. The company took immediate possession of the property and on the same day entered into a written contract with the plaintiff Bertha Germo to sell the property to her for $3,500 payable $500 in cash and the balance with interest at $35 a month and to convey the property to her by warranty deed when such purchase price was fully paid. In pursuance of the contract Bertha Germo took immediate possession of the property. On August 2, 1921, she entered into a written contract with Anna Erhardt to sell the property to her for $3,600 payable $200 in cash and the balance with interest at $30 a month, and to convey the property by warranty deed to her when the purchase price was fully paid. In pursuance of that con-

tract, Erhardt immediately went into possession of the property and on March 20, 1922, assigned her contract to the defendant T. N. Williams, who went into possession of the property under and in pursuance of the contract between Bertha Germo and Erhardt, and ever since continued in possession thereof.

Until about October 2, 1928, Bertha Germo made all payments and performed all conditions of her contract with the Hoffman Company and until June 30, 1931, Erhardt and Williams performed all of the conditions of their contract with Bertha Germo. October 2, 1928, the Hoffman Company, under and in pursuance of its contract with Bertha Germo, executed and delivered to her and to M. P. Germo as joint tenants a warranty deed to the property, at which time it was agreed that the balance of the payments due on the contract amounting to $600 should be secured by mortgage on the property "to be arranged sometime in the future." But prior to October 2, 1928, M. P. and Bertha Germo were ready and willing and often offered to pay to Hoffman Company the balance of the purchase price due under the contract upon the delivery of a proper deed to the property, but the Hoffman Company declined to do so for reasons later made apparent.

June 30, 1931, Zion's Benefit Building Society demanded of Williams that thereafter he pay all further payments due under his contract with Bertha Germo and Erhardt to the Building Society, and ever since such time Williams made all such payments to the society at the rate of $30 a month and refused to make any further payments to Bertha Germo. On September 11, 1926, Hoffman Company owed on its contract with the Dunbars $2,350. It applied to the Building Society for a loan of that amount in the name of the defendant W. S. Booker, its secretary, to pay the unpaid purchase price which the Hoffman Company owed the Dunbars and to secure the loan by mortgage on the property, and though the loan was in the name of Booker, it nevertheless was for the use and benefit of the

Hoffman Company. In furtherance thereof and for its use and benefit, Hoffman Company on January 20, 1927, procured the Dunbars to execute and deliver a warranty deed to the property to Booker, whereupon the loan was made to Booker in the sum of $2,350 and to secure which Booker gave the Building Society a mortgage for such amount on the property, which amount of $2,350 was paid to the Dunbars in full payment of the Hoffman Company contract. Prior to and at the time of the making of such loan, the Building Society had actual notice and knowledge that Williams was in the actual possession of the property and that he claimed it under the contract of purchase between Bertha Germo and Erhardt, and had knowledge or by inquiry from Williams or Germo could have learned the character and extent of such interest, and had actual notice and knowledge that M. P. and Bertha Germo had a contract with Hoffman Company for the purchase of the property in the sum of $3,500 with interest and that they at the time of the making of the loan had paid to the Hoffman Company more than $2,500 with interest on such purchase price.

Williams and his wife gave their written consent to the Building Society making the loan and acknowledged that their claim should be subordinated to its mortgage. The contract between the Dunbars and Hoffman Company did not provide for or contemplate that the Hoffman Company should execute a mortgage to them to secure the purchase price. When the mortgage was given to the Building Society the whole of the purchase price of $3,000 on the contract between the Dunbars and the Hoffman Company was long past due, of which $2,350 remained unpaid, nor did the contract provide that the payment thereof could be changed or postponed, or that the property might be subjected to a mortgage or otherwise for the payment of the purchase price or any part thereof or of monthly dues, fines, etc., in accordance with the by-laws of the Building Society. Until the property by the Dunbars was conveyed to Booker, the legal title was in the Dunbars, nor had they at any time

prior to the conveyance terminated or forfeited the contract with the Hoffman Company.

October 18, 1927, Booker by warranty deed conveyed the property to Hoffman Company subject to the mortgage of $2,350 to the Building Society, and on October 2, 1928, Hoffman Company by warranty deed conveyed the property to M. P. and Bertha Germo as joint tenants, at which time Bertha Germo on the contract with the Hoffman Company was indebted to it in the sum of $600 (which amount was many times prior to October 2, 1928, offered to be paid by her upon delivery to her of a proper deed to the property, which the Hoffman Company refused to accept), but when the deed was delivered, she agreed to give a mortgage on future arrangements on the property to secure the payment of $600. Booker was found to have no right, title, or interest in the property. No finding was made what amount was due and unpaid on the note and mortgage of the Building Society at the commencement of the action, but by the answer of the Building Society it is alleged there then was due and unpaid $1,742 and interest.

Upon the foregoing findings, conclusions of law were made and a judgment rendered and entered as follows:

1. That the plaintiffs, M. P. and Bertha Germo, as joint tenants were adjudged to be the owners in fee of the property described in the complaint and findings.

2. That Williams was the owner of an equitable interest and estate in the property under and by virtue of the contract dated August 2, 1921, between Bertha Germo and Erhardt and assigned by Erhardt to Williams, and that the extent of his interest was the aggregate amount of payments made by him and Erhardt under the contract to the plaintiffs or either of them.

3. That the defendant Hoffman Company was entitled to an equitable lien or mortgage upon the right, title, interest, and estate of M. P. and Mertha Germo in and to the property for the sum of $600, the amount due under the contract

dated July 10, 1920, between the Hoffman Company and the plaintiffs for the sale and purchase of the property.

4. That the mortgage dated January 20, 1927, given by the Hoffman Company through Booker to the Building Society was declared to be a lien in and upon all right, title, interest, and estate of Hoffman Company in and to the real property, to wit, the equitable lien or mortgage for the sum of $600, and in and to all right, title, interest and estate of Williams in and to the real property, to wit, his interest and estate under and by virtue of the contract dated August 2, 1921, between Bertha Germo and Erhardt for the sale and purchase of the real property. That it was declared, except to the extent of the lien for the sum of $600, the mortgage was not a lien in or upon the right, title, interest, and estate of the plaintiffs, M. P. and Bertha Germo, in and to the real property.

5. That the defendant Booker had no right, title, estate, or interest in or to the real property or any part thereof.

6. That if Williams had made default in payments of the purchase price payable under the contract between Bertha Germo and Erhardt, this judgment should not affect any right of Bertha Germo to exercise by proper proceedings any right she might have to terminate or forfeit the contract.

7. That unless the plaintiffs paid the Building Society $600 within six months after the entry of the judgment, the same shall thereafter bear interest at 8 per cent. per annum.

8. That all adverse claims of the defendants and each of them, except as otherwise by the decree stated, to the said property or any part thereof, were declared to be without right and the defendants and each of them barred and foreclosed from any right, title, estate, lien, or interest in the property, except as otherwise by the decree stated.

9. That the title of the plaintiffs to the property and every part thereof was quieted as to any and all adverse claims of the defendants or any of them and all persons

claiming through them or either of them, except as otherwise by the decree stated.

10. Plaintiffs were given judgment for costs against the defendants, except as to Erhardt.

Now how about this "hotchpotch" created by the manipulations of the Hoffman Company whereby the Germos or the Building Society must suffer a loss, and who then withdrew from the judicial arena, leaving the parties to the perplexity of the chancellor, and with no concern itself as to who may be found or decreed the victim. The assignments and arguments are chiefly on behalf of the Building Society. In fact, not anything is said in support of the appeal on behalf of Williams. The points made are: (1) That the Building Society is entitled to be subrogated to the rights of the Dunbars; (2) that its mortgage was a purchase-money mortgage, which, as claimed, "further supports the argument of subrogation," or at any rate, as urged, constituted the mortgage a first lien on the premises. That is based upon the claim that the money loaned by the Building Society was paid on or applied to what was due and owing the Dunbars on their contract with the Hoffman Company amounting to $2,350, the amount of the loan, and the mortgage given on the premises to secure the payment thereof.

The findings recite that on September 11, 1926, the Hoffman Company "was indebted" to the Dunbars in the sum of $2,350, the balance remaining unpaid on the contract between the Dunbars and the Hoffman Company; that on that date the Hoffman Company applied to the Building Society for a loan of $2,350 "upon the security of a mortgage on the said real property for the purpose of paying the indebtedness," which loan was made in the name of Booker, the secretary of the Hoffman Company, but for the use and benefit of the company; that September 25, 1926, the Hoffman Company procured the Dunbars to execute a deed to the property to Booker for the use and benefit of the company, but which deed was not delivered to Booker until on

or about January, 20, 1927, at which time the Building Society "loaned and advanced" to the Hoffman Company through Booker the sum of $2,350, who executed the mortgage on the real property to secure the payment thereof "and interest, monthly dues, fines, etc., in accordance with the by-laws of said mortgagee." Let it here be noted that what the Hoffman Company obtained from the Building Society was a building loan "in accordance with the note and agreement" signed by Booker, the terms of which are not found nor before us. Enough, however, is before us to indicate that the terms and conditions thereof are different from those contained in the contract between the Dunbars and the Hoffman Company.

It is asserted by the Building Society that the Hoffman Company "was the agent of Mrs. Germo"; that she permitted the company "to act as her agent to handle the financial returns from her contract with Erhardt and to apply the funds as they "(company) saw fit," and because of such relation of agency, it in effect is asserted that Mrs. Germo was bound by what the Hoffman Company did in causing the Dunbars to convey the property to Booker and he in turn mortgaging it to the Building Society. We do not see anything in the findings justifying any such relation. We think quite the contrary appears. The relation between Mrs. Germo and the Hoffman Company was that of parties to a contract, the one agreeing to buy and the other to sell a described parcel of land. Neither was acting for or on behalf of the other, but wholly as principals each for himself and independently of the other. Nor by the terms of the contract or otherwise was the one authorized or permitted to act for the other. We may thus dismiss the claimed relation of agency. Upon the findings, unexplained as they are, the Hoffman Company not only breached its contract with the Germos, but so manipulated matters as to defraud them. After the Germos had paid all of the purchase price of the contract, except $600, and offered to pay the balance upon delivery of a proper deed in accordance

with the contract the Hoffman Company refused to accept the payment and give the deed. The reason therefor is apparent. It had not kept its contract with the Dunbars and then was without title to convey. It thereupon arranged with the Building Society to borrow $2,350, the amount it owed on the contract with the Dunbars, and took the loan in the name of its secretary, caused the Dunbars to convey the property to him, in turn caused him to mortgage the property to the Building Society to secure the payment of the loan as a building loan, turned the borrowed money over to the Dunbars for the deed delivered to its secretary, all of which, as found by the court, was done with notice to and knowledge of the Building Society, with knowledge of the contract of the Germos with the Hoffman Company and upon which they had paid more than $2,500 with interest, knowledge of the contract of the Germos with Erhardt and Williams thereunder in possession of the property, nine or ten months thereafter caused its secretary to convey the property to it, subject to the mortgage of the Building Society, and a year thereafter by warranty deed conveyed the property to the Germos, whether subject to the mortgage or not is not found, of which mortgage $1,742 at the commencement of the action as alleged by the Building Society remained due and unpaid, which on the mortgage record stood as a lien and an incumbrance on the property when the Hoffman Company conveyed it to the Germos. From all this the Building Society seeks to bring itself within the doctrine that he who advances money at the request of a debtor or creditor to discharge *a prior lien* on property and receives a *new mortgage* as security for the advances, with an understanding that the same shall be a first lien on the property, is entitled to subrogation to the prior lien and as a first lien, even as against intervening lienors, unless the superior or equal equities of others would be prejudiced thereby; or as urged that if the society is not entitled to such subrogation, its mortgage nevertheless should be regarded as a *purchase-money mortgage* and as

a first lien on the property. To support that the Building Society cites, among others, the following cases: *Federal Land Bank* v. *Marvin*, 228 Ky. 242, 14 S. W. (2d) 762, 70 A. L. R. 1392, 1405; *George* v. *Butler*, 16 Utah 111, 50 P. 1032; *Hoagland & Co.* v. *Decker*, 118 Neb. 194, 224 N. W. 14; *Merchants' & M. Bank* v. *Tillman*, 106 Ga. 55, 31 S. E. 794; *Wilkins* v. *Gibson*, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204; *Ladd & Tilton Bank* v. *Mitchell*, 93 Or. 668, 184 P. 282, 6 A. L. R. 1420; *Missouri State Life Ins. Co.* v. *Barnes Const. Co.*, 147 Ga. 677, 95 S. E. 244; and *Vigars* v. *Hewins*, 184 Iowa 683, 169 N. W. 119. In view of the particular facts as found, we think the doctrine contended for and the cases cited in support thereof are not applicable, or at least do not justify the application of the doctrine.

In 25 R. C. L. 1313, it is stated that the doctrine of subrogation is a creature of courts of equity and will be allowed or not as the equities of the particular case require, that the doctrine rests upon the maxim that no one should be enriched by another's loss, and that the right to ■ the doctrine depends upon the facts and circumstances of each particular case. And it is generally recognized by the authorities that subrogation can be enforced only with due regard to the rights, legal and equitable, of others, and cannot be invoked so as to work injustice, or defeat a legal right or overthrow a superior, or perhaps even an equal equity, or displace an intervening right or title. *Fraser* v. *Fleming*, 190 Mich. 238, 157 N. W. 269. The doctrine, so far as here applicable, is stated in 27 Cyc. 1182:

"Where a purchaser of land, at the same time he receives a conveyance, executes a mortgage to a third person, who advances the purchase-money for him, such mortgage is entitled to the same preference over other liens existing against the mortgagor as it would have had if it had been made to the vendor himself. But the money must have been loaned with the express purpose and intention that it should be used in paying the purchase-price of the land; the mere fact that it was so used, without any understanding to that effect, will give the lender no superior equity. And if the purchaser of land is already indebted to the vendor for the price of the same, and then borrows money from a third person for the purpose of discharging this

debt, and gives the latter a mortgage on the land, this mortgage is not entitled to the standing of a purchase-money mortgage."

It is here argued that the Building Society is entitled to be subrogated to the rights of the Dunbars who had entered into the contract to convey the property to the Hoffman Company upon payment of the purchase price as by their contract provided. This is not a case where vendors, the Dunbars, delivered a deed to the property and took a mortgage back to secure the payment of the purchase price or a portion thereof, and where another at the request of the vendor or vendee or a creditor advanced moneys in payment of the mortgage and took a new mortgage in lieu thereof as security for such advances. Just what rights of the Dunbars to which the Building Society was entitled to be subrogated, is not clear. The title to the property remained in the Dunbars until the purchase price was paid. The contract between them and the Hoffman Company did not, so far as made to appear, contemplate the giving of a mortgage to secure the payment of the purchase price. On non-payment of the purchase price the right the Dunbars had under the contract was to terminate the contract, or on tendering the deed, demand and sue to recover the purchase price, or sell the property on foreclosure and apply the proceeds of sale to the purchase price, and if insufficient take a deficiency judgment. But when the purchase price was fully paid and the deed delivered, all such rights were extinguished. Hence the further argument that the mortgage of the Building Society was a purchase-money mortgage and paramount to all other claims and liens against the Hoffman Company; but on the facts as found, the authorities seem to be against that. In 41 C. J. 531, § 472, it is stated that:

"If the purchaser of land is already indebted to the vendor for the price of the same, and then borrows money from a third person for the purpose of discharging this debt, and gives the latter a mortgage on the land, this mortgage is not entitled to the standing of a purchase-money mortgage."

The same statement is contained in 27 Cyc., supra.

On the facts as found the Hoffman Company long before it obtained the loan was indebted to the vendors, the Dunbars, for the greater portion of the purchase price of the property, $2,350, the amount of the loan to discharge the indebtedness.

Lastly, to invoke the doctrine of subrogation or to regard the Building Society mortgage a purchase-money mortgage and as a first and paramount lien on the property is to the prejudice of the Germos. As to that the Building Society is not innocent. It took its mortgage with actual knowledge and notice of the contract between the Germos and the Hoffman Company and with knowledge that the Germos at that time had paid on their contract more than $2,500 with interest and with knowledge of the contract between the Germos and Erhardt and the assignment by Erhardt to Williams and of his possession of the property in virtue of the contract between the Germos and Erhardt. Notwithstanding that, the Building Society in June, 1931, in violation of his contract, forbade Williams to make any further payments on the contract to the Germos, and demanded that he make all future payments to it, the Building Society, and induced him to give his written consent to the Building Society mortgage and to acknowledge that his interest in the property was subordinate to the claim of the Building Society as created by its mortgage. Whatever rights the Building Society may have in the premises, it certainly had not the right to cause or induce Williams to breach or violate the contract between the Germos and Erhardt which he had assumed and agreed to carry out, nor to induce or aid the Hoffman Company to breach or violate its contract with the Germos. It is urged that the Germos were not prejudiced, because to get title they were required not only to pay the purchase price of the land contracted to be paid by their contract with the Hoffman Company, but because of the default of the company, were also required to pay the Dunbars the contract price which the Hoffman

Company had agreed to pay but had failed to do. By their contract, the Germos were to have the property free and clear of incumbrance upon the payment of the purchase price stipulated by their contract. They had not assumed or agreed to pay any obligation which the Hoffman Company owed or had contracted to pay, or to pay the Dunbars, nor any mortgage or incumbrance which the Company might put upon the property without their knowledge or consent. Thus, to here invoke the doctrine of subrogation, as is contended, is to impose on the Germos obligations which they were and are under no legal duty to assume. In other words, if subrogation be invoked, the Germos to get title are required not only to pay the full purchase price agreed to be paid by them, but also the mortgage of the Building Society, in effect, pay the purchase price twice. Since the doctrine of subrogation rests on the maxim that no one shall be enriched by another's loss, it is clear that if the doctrine be here invoked, it is not to prevent the Germos from being enriched by another's loss, but to permit the Hoffman Company and its mortgagee with knowledge of the Germos' rights, to be enriched by a loss to the Germos by requiring them to assume and pay an obligation which they were not under any legal duty to perform.

The views herein expressed disallowing the claimed subrogation and the claim that the Building Society mortgage is a purchase-money mortgage superior to the rights of the Germos are, as we think, supported by the authorities. *Paget* v. *Peters*, 133 Or. 608, 286 P. 983, 289 P. 1119; *Lorenz Co.* v. *Gray*, 136 Or. 605, 298 P. 222, 300 P. 949; *Lockie* v. *Co-operative Land Co.*, 207 Cal. 624, 279 P. 428; *Fraser* v. *Fleming*, supra; *Baker* v. *American Surety Co.*, 181 Iowa 638, 159 N. W. 1044.

The judgment of the court below is therefore affirmed, with costs to respondent.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.