[No. 36440. Department One. August 15, 1963.]

WALTER F. GRAHAM, *as Guardian ad Litem, Appellant,* v. BUFORD W. RAABE *et al., Respondents.**

*Raymond A. Reiser*, for appellant.

*Taylor & Taylor*, for respondents.

*Reported 384 P. (2d) 629.

HILL, J.—The issue presented here is whether certain of the defendants have a right of subrogation to certain county and federal tax liens.

The plaintiff, Gary Guy Coy, has secured a judgment establishing his right to possession of certain property as a lessee, and from this portion of the judgment no appeal has been taken. It is an option to purchase, contained in that lease, which brings the case to this court.

The trial court has attempted to make Gary Coy's exercise of that option subject to the rights of subrogation to county and federal tax liens claimed by certain defendants; and from this portion of the judgment the plaintiff appeals.

A chronological statement is necessary: March 8, 1948, Walter T. Coy, the then owner of the Hi-Line Theatre,[1] mortgaged it to the Reconstruction Finance Corporation (hereinafter called RFC).

January 12, 1953, RFC assigned the mortgage to Frank McClellan.

January 15, 1953, the United States filed two liens against Walter T. Coy for unpaid and delinquent income taxes in the sums of $139,285.82 (vault file No. 2919841) and $52,021.71 (vault file No. 2919842).

February 4, 1953, and April 16, 1953, the United States filed liens against Walter T. Coy for unpaid and delinquent income and admission taxes in the sums of $3,049.64 (vault file No. 2925758) and $148,414 (vault file No. 2948281).

September 23, 1955, Frank McClellan purchased the theatre property at sheriff's sale, he having foreclosed the RFC mortgage. (There is no indication as to whether or not the United States was joined as a party defendant in the foreclosure proceeding. We shall assume that it was not.)

August 14, 1957, the period of redemption having long since expired, a sheriff's deed issued to McClellan.

In 1957, Walter T. Coy made two offers in compromise to pay a reduced sum in full satisfaction of the federal tax liens, but at the time of trial they had not been acted upon.

---

[1] Lots 8 through 15, Block 2, Cedarhurst Division No. 1. These 8 lots are described in all conveyances, mortgages, lien claims, title insurance policies, etc., except as hereinafter indicated.

The effect of these offers of compromise, by their terms, was to extend the statute of limitations throughout the period in which the offer was pending and one year thereafter.

July 9, 1958, McClellan executed a lease for a 10-year period (to begin August 11, 1958)[2] to Walter T. Coy and his son, Gary Guy Coy (the plaintiff in this action), as co-lessees with an option to purchase the property after 5 years from the date of the lease for $7,000. This option was joint and several. (Gary Coy was then a minor, as he was at the time this action was commenced by his guardian ad litem; however, he had attained his majority before trial and was substituted as party plaintiff.) Walter T. Coy has disclaimed any interest in this lease, and the trial court and the parties on this appeal have proceeded on the assumption that Gary Coy is the only lessee. The $7,000 purchase price is understandable in view of the fact that McClellan had invested only the amount paid the RFC for the assignment of the mortgage he had foreclosed, and that amount might well be the extent of his investment in the property which had originally belonged to Walter T. Coy, one of the lessees.

July 13, 1959, the United States filed a fifth lien against Walter T. Coy for unpaid and delinquent withholding taxes in the sum of $1,264.22 (vault file No. 3689497). He had at that time only the leasehold interest in the property.

April 25, 1960, a judgment was entered in an unlawful detainer action brought by McClellan, terminating the leasehold interest[3] of Walter T. Coy and Gary Coy for nonpayment of rent.

Within 5 days (April 28, 1960) the amount of the judgment ($2,032.90) was paid into court; and, pursuant to RCW 59.12.170[4] the lease was automatically reinstated and the lessees continued to operate the theatre.

---

[2] The lease and option, however, cover only Lots 8 through 14, Block 2 of Cedarhurst Division No. 1. This excludes Lot 15 which, as indicated in note 1, is included in the various conveyances, mortgages, lien claims, and title insurance policies appearing in the record.

[3] The property is here again described as Lots 8 through 15, Block 2, Cedarhurst Division No. 1.

[4] "If upon the trial the verdict of the jury or, if the case be tried

August 23, 1960[5] the judgment was satisfied of record, on which date the money paid into court was received by McClellan.

July, 1960, the Internal Revenue Service levied upon the property and took possession; it then made an attempt to interest a purchaser in the property. A transaction was worked out whereby Buford W. Raabe and Josephine, his wife, agreed to purchase the property from McClellan for $50,000. The Internal Revenue Service agreed to release all federal tax liens against the property for $31,157.87[6] to be paid out of the purchase price. The Metropolitan Federal Savings and Loan Association (hereinafter referred to as Metropolitan) was to loan the Raabes $25,000 of the purchase price, and all taxes and other liens were to be paid from the purchase price.

The parties all acted in reliance on a report of a title insurance company, dated August 9, 1960 at 8:30 a.m., which showed title in McClellan subject to delinquent general taxes, water district assessments, and liens for federal taxes, but which did not disclose the existence of the lease of July 9, 1958, which contained the option to purchase.

Apparently, the examiner for the title insurance company

without a jury, the finding of the court be in favor of the plaintiff and against the defendant, judgment shall be entered for the restitution of the premises; and if the proceeding be for unlawful detainer after neglect or failure to perform any condition or covenant of a lease or agreement under which the property is held, or after default in the payment of rent, the judgment shall also declare the forfeiture of the lease, agreement or tenancy. . . . When the proceeding is for an unlawful detainer after default in the payment of rent, and the lease or agreement under which the rent is payable has not by its terms expired, execution upon the judgment shall not be issued until the expiration of five days after the entry of the judgment, within which time the tenant or any subtenant, or any mortgagee of the term, or other party interested in its continuance, may pay into court for the landlord the amount of the judgment and costs, and thereupon the judgment shall be satisfied and the tenant restored to his estate; . . ."

[5] This delay of almost four months by McClellan in "taking down" the money paid is of particular significance, as explained later in this opinion.

[6] This is the amount which appears in the trial court's findings and decree and in all briefs; we find only evidence to substantiate a payment of $30,940.66.

had noted the entry of the decree in the unlawful detainer action cancelling the lease and option to purchase, but had failed to note the payment of the judgment and the restoration of the lease to good standing, as provided by RCW 59.12.170, on April 28, 1960. A satisfaction of the judgment would have immediately challenged the attention of the examiner, but when he made his examination the satisfaction had not been entered and was not entered, as we have seen, until August 23, 1960, the same day that the deed from McClellan to the Raabes was recorded.

The Raabes and McClellans signed escrow instructions describing the transaction: "Terms of Sale: Sales price $50,000.00, payable as follows. All cash to seller at time of closing."

The escrow company paid the Commissioner of Internal Revenue $31,157.87 (see footnote 6) for "Certificate of Discharge of Property from Federal Tax Liens,"[7] but other than the property described, the tax liens remained in full force and effect on all property and interests of W. T. Coy.

Real and personal property taxes, in excess of $5,000, due or delinquent, were paid as was a water district assessment of $305.20. After all expenses of the sale, including a $5,000 real estate commission, were paid, McClellan received $7,250 out of the $50,000.

The trial court decreed that the Raabes, as the purchasers, and Metropolitan, as the mortgagee, should be subrogated to the lien rights of King County for the real and personal property taxes and for the water district assessment in the amount of $5,952.29 paid to King County on August 23, 1960, in satisfaction of the taxes and assessments which were then liens against the Hi-Line Theatre property.

The trial court further decreed that they should be subrogated to

". . . the lien rights of the United States Government . . . for the amount paid to release the said real property from said tax liens in the amount of $31,157.87 paid on the 23rd day of August, 1960, . . ."

---

[7] The property described included the Hi-Line Theatre property (see footnote 1) and the White Center Theatre property which had also been owned by Walter T. Coy.

The trial court then directed the sale of the Hi-Line Theatre, as is, complete with all equipment and rugs, located on Lots 8 through 14, Block 2, Cedarhurst Division No. 1, " . . . in the manner provided by the laws of the State of Washington for the sale of real estate upon levy of sale and for the sale of personal property and to make return of sale to the Clerk of this Court. The sale may be bid by the bidder assuming the mortgage, now an encumbrance on said real property, wherein the Metropolitan Federal Savings and Loan Association is mortgagee and paying the remainder of the bid price in cash, or the bidder may bid the entire purchase for cash. Other than said mortgage, the real property to be free and clear of all liens and encumbrances. At the sale, one-tenth of the bid price shall be paid in cash and the remainder upon confirmation of the sale. There may be redemption from the Sheriff's sale as allowed by law of the State of Washington.

"The proceeds of the sale for cash shall be disbursed first in payment of the unpaid balance of the mortgage to Metropolitan Federal Savings and Loan Association at the date of payment and the balance to Buford W. Raabe and Josephine Raabe, his wife, and where the mortgage is assumed as part of the bid price, the amount bid above the mortgage shall be disbursed to Buford W. Raabe and Josephine Raabe, his wife."

From this portion of the judgment, relative to subrogation, the plaintiff (Gary Coy) appeals.

The basic issue is: Did the Raabes and Metropolitan have any right of subrogation?

Although the trial court's decree purports to recognize the validity of plaintiff's leasehold interest, it has, by subrogating the Raabes and Metropolitan to the lien rights of the county and federal government, effectively cut plaintiff off from any further interest in the property.

The purchasers and their mortgagee are not entitled to subrogation for the purpose of defeating plaintiff's leasehold interest. In ascertaining whether subrogation is appropriate, as in other cases of equitable relief, the court must weigh and balance the equities of the parties, having due regard to the legal and equitable rights of others. As the United States Court of Appeals stated in a recent case, subrogation

" . . . 'will not be enforced to the prejudice of other rights of equal or higher rank, or to displace an intervening right or title, or to overthrow the equity of another person.' . . ."

*Compania Anonima Venezolana De Navegacion v. A. J. Perez Export Co.* (C. A. 5th 1962), 303 F. (2d) 692, 697. See also *Germo v. Zion's Ben Bldg. Soc.* (1934), 85 Utah 227, 237, 39 P. (2d) 312, 316; *Obici v. Furcron* (1933), 160 Va. 351, 360, 168 S. E. 340, 343, 91 A.L.R. 848; 50 Am. Jur., Subrogation § 13 (1944).

What are the comparative equities? The purchasers and their mortgagee were placed on constructive notice of plaintiff's interest in the property. The lease was a matter of record, as was the unlawful detainer action and the payment of the judgment into court within 5 days pursuant to RCW 59.12.170. It is conceded that it was a valid and subsisting lease and that the interest of the purchasers is subject to it; however, the effect of the court's decree was to grant priority to the mortgage and wipe out the lease.

Plaintiff had no obligation to pay either the federal tax liens[8] or the county tax and assessment liens.[9] The most that

---

[8] These were the obligations of Walter T. Coy.

[9] These were the obligations of Frank McClellan, the owner of the property when the taxes and assessments were levied. It is true the Coys had a lease during this period, but the lease had no provision for the payment of taxes or assessments on the real and personal property covered by the lease. In the absence of a contractual obligation to pay taxes and assessments, the duty to pay them rests on the lessor and not the lessee. *Hammond Lbr. Co. v. Los Angeles* (1936), 12 Cal. App. (2d) 277, 55 P. (2d) 891; *Becker v. Mayor etc. of Little Ferry* (Ct. E. & App. 1941), 126 N.J.L. 338, 19 A. (2d) 657; *Northern Liberties Gas Co. v. United Gas Imp. Co.* (1944), 348 Pa. 433, 35 A. (2d) 284; see *Trimble v. Seattle* (1911), 64 Wash. 102, 116 Pac. 647, aff'd, 231 U. S. 683, 58 L. Ed. 435, 34 S. Ct. 218 (1914). See also annotation: Rights and duties between landlord and tenant in respect of taxes or assessments in absence of stipulation in lease in that regard, 73 A.L.R. 824 (1931).

Subrogation is universally denied to the party primarily liable. See, *e.g. Michigan Hospital Ser. v. Sharpe* (1954), 339 Mich. 357, 63 N. W. (2d) 638, 43 A.L.R. (2d) 1167; *Brown v. Sheldon State Bank* (1908), 139 Iowa 83, 95, 117 N. W. 289, 293; *Luikart v. Buck* (1936), 131 Neb. 866, 869, 270 N. W. 495, 497. McClellan, the party primarily liable to pay the taxes and assessments, is not entitled to subrogation. Defendants Raabe and Metropolitan, having derived their title through McClellan, stand in his

can be said is that if, and when, the plaintiff seeks to exercise his option to purchase for $7,000, he will secure a windfall; but it remains to be seen at whose expense, if anyone's.

■ The trial court, however, in its desire to protect the Raabes in their purchase of the property and the Metropolitan in its financing of such purchase, confused Gary Coy's right to the occupancy of the property with the consequences of the exercise of the option to purchase. It is his possible acquisition of property probably worth more than $50,000 for $7,000 which offended the conscience of the court.

Gary Coy, under his lease, is entitled to the possession of the premises; and not until an attempt by him to enforce his option would the claimed unconscionable circumstance arise which could conceivably justify the setting aside of the legal rights of these parties by the intervention of the equitable doctrine of subrogation. Gary Coy has 5 years in which to exercise his option, and he may never exercise it.

On the other hand, the Raabes received exactly what their escrow instructions called for—a warranty deed from McClellan and a policy of title insurance. The fact that Gary Coy has a leasehold interest in seven of the eight lots conveyed by McClellan to the Raabes does not leave them without an adequate remedy at law, i.e., a suit for breach of warranty. They are also in position to put the onus of overlooking the legal significance of RCW 59.12.170 on the title insurance company. Risks of this kind are precisely the reason why premiums are paid for title insurance.

That portion of the trial court's decree granting subrogation is reversed. The trial court should strike from its decree any provision relating to enforcement of any lien, and direct that Gary Guy Coy be placed in possession under his lease. The right of McClellan (or the title insurance company), assuming they bear the ultimate burden of making the purchasers and their mortgagee whole, to be

shoes and are likewise not entitled to subrogation to the lien of any taxes or assessments due King County which McClellan was obligated to pay.

subrogated to the lien rights of the federal government against Walter T. Coy, is a question for another day.

FINLEY, ROSELLINI, HUNTER, and HALE, JJ., concur.

September 24, 1963. Petition for rehearing denied.