[No. 38175.    Department Two.    September 22, 1966.]

GARY GUY COY, *Appellant*, v. BUFORD W. RAABE *et al.*,
*Respondents and Cross-appellants*, PUGET SOUND
TITLE INSURANCE COMPANY, *Respondent.**

*Raymond A. Reiser*, for appellant.

*Heckendorn & Best* and *C. Henry Heckendorn*, for
respondents and cross-appellants.

*Edward W. Taylor* (of *Barker, Day, Callow & Taylor*),
for respondent Puget Sound Title Insurance Company.

WEAVER, J.—This is an equitable action in which the

*Reported in 418 P.2d 728.

plaintiff seeks a decree of specific performance to enforce an option to buy certain real property. The option to buy is contained in a lease. The defense is two-pronged and, by its nature, in the alternative: (1) the lease and option are invalid; and (2) defendants and intervenor are entitled to be paid, under the doctrine of subrogation, for certain liens against the property, which they paid.

In general, the same questions were presented to us on a prior appeal. *Graham v. Raabe*, 62 Wn.2d 753, 384 P.2d 629 (1963). The questions decided in our former opinion are not only the law of the case, they are res judicata. In short, we held that the lease was valid—plaintiff was entitled (1) to possession of the premises during the term of the lease, and (2) the option to purchase *not* yet having been exercised, the trial court's determination of the claimed rights of subrogation was premature and presented "a question for another day." 62 Wn.2d 753, 761, 384 P.2d 629 (1963). The trial court (in *Graham v. Raabe*) confused the lessee's right to occupancy of the property with the consequences of the possible exercise of the option to purchase.

The "other day" has arrived. Plaintiff, Gary Guy Coy, seeks to exercise the option to purchase and has tendered the option price to defendants.[1] The tender has been refused; hence this action.

The trial court in the instant action decreed specific performance of the option to purchase upon payment of $7,000 to defendants "when plaintiff, within sixty days has reimbursed the defendants and third party intervenor for paying federal tax liens in the sum of $30,940.66 with interest at 6 per cent per annum from August 23, 1960, to date of payment."

Plaintiff appeals from that portion of the decree granting subrogation to defendants and intervenor to the lien of the federal government for taxes due from Walter T. Coy (father of plaintiff), and from the court's refusal to allow

---

[1]We pointed out in our former opinion that Walter T. Coy has disclaimed any interest in this lease, and the trial court and the parties proceeded on the assumption that Gary Coy is the only remaining lessee.

plaintiff damages against defendants for their alleged negligent care of the property while in possession. Defendants cross-appeal from that portion of the decree specifically enforcing the option to purchase.

Ordinarily, when we have written a prior opinion we refer to the facts therein set forth and do not repeat them. The facts of the instant case, however, are so complex that we deem it necessary to repeat the salient facts in order that this opinion be meaningful.

Walter T. Coy, father of plaintiff, owned and operated the Hi-Line Theater. March 8, 1948, he mortgaged the theater to the Reconstruction Finance Corporation for $50,000. January 12, 1953, the R.F.C. assigned the mortgage to Frank A. McClellan, apparently for the unpaid balance of $6,000. Between January 15, 1953 and July 13, 1959, the United States Government and King County filed various tax liens which became liens against the property. They are more fully described in our former opinion. *Graham v. Raabe, supra.*

Having foreclosed his mortgage, Mr. McClellan purchased the property at sheriff's sale on September 23, 1955. August 14, 1957, a sheriff's deed was issued to him. Thus Mr. McClellan became the owner of the property involved.

July 9, 1958, Mr. McClellan leased the property (less one lot) to Walter T. Coy and Gary Coy for a term of 10 years from August 11, 1958. In our former opinion it is stated:

It is conceded that it was a valid and subsisting lease and that the interest of the purchasers is subject to it; . . . . 62 Wn.2d at 759.

The lease further provided:

OPTION:— Lessee at their option after FIVE (5) YEARS may purchase said properties from lessor or his estate for Seven Thousand Dollars ($7,000.00) and secure full title thru this instrument without due process of law. No rentals paid are a part of purchase price and title can be vested in either of lessees. Lessee can by notifying lessor choose to renew or assign this instrument by notifying lessor 30 days before expiration.

April 25, 1960, a judgment was entered in an unlawful detainer action brought by Mr. McClellan to terminate the leasehold interest of Walter T. Coy and the plaintiff for nonpayment of rent. Five days thereafter, April 28, 1960, the amount of the judgment of $2,032.90 was paid into court and, pursuant to RCW 59.12.170, the lease was automatically reinstated and the lessees continued to operate the theater. The judgment, however, was not satisfied of record until August 23, 1960, when Mr. McClellan drew down the money deposited in court.

July, 1960, the Internal Revenue Service levied upon the property, took possession, and found prospective purchasers, defendants Raabe. A transaction was worked out whereby they agreed to purchase the property from Mr. McClellan for $50,000, and the Internal Revenue Service agreed to release all federal tax liens—amounting to approximately $460,000 as of July 7, 1960—for $30,940.66, to be paid out of the $50,000 purchase price. The Metropolitan Federal Savings & Loan Association loaned defendants Raabe $25,000 of the purchase price, with all taxes and other liens to be paid from the purchase price.

In this transaction, Puget Sound Title Insurance Company, third party intervenor, issued two policies of insurance: the first to defendants Buford W. Raabe and wife insuring fee simple title in them subject to a $25,000 mortgage to Metropolitan Federal Savings and Loan Association; the second, insuring Metropolitan's mortgage. All parties relied upon the title reports (which disclosed the tax liens and assessments) and the policies issued by the title insurance company. The present problems were precipitated by the title company's *failure to ascertain the existence of the lease and option to purchase* of July 9, 1958 and of its reinstatement, pursuant to RCW 59.12.170, after judgment in the 1960 unlawful detainer action. The purchasers (defendants Raabe), their mortgagee (Metropolitan), and their insurer were placed on constructive notice of plaintiff's interest in the property.

The record discloses that Mr. McClellan received $7,250 of the purchase price paid in return for his conveyance. The

title company has acquired (by reason of its policy) Metropolitan's mortgage and has paid $8,000 on its policy liability to defendants, Raabe, who also received over $4,000 in rental income while in possession of the property.

The main thrust of this appeal is that defendants Raabe and intervenor (the title company) are entitled to be subrogated to the claims of the United States Government, which they paid.

We digress for a moment. In our judgment there is a vast difference between the position of defendants Raabe (who we find are entitled to subrogation) and the intervenor (who we find is not entitled to subrogation). The former are bona fide purchasers to the extent that they were entitled to rely upon others who were paid to give an expert opinion and insure title. The latter are engaged in giving those expert opinions for a consideration. In equity, defendants and intervenor are poles apart. Further, in view of our former decision, intervenor states in its brief that:

> We claim no right to subrogation as to *anything* except *federal* taxes paid. (Italics theirs.)

■ The federal taxes were the obligation of Walter T. Coy, not of plaintiff. The state taxes and assessments were the obligation of Mr. McClellan, the owner of the property when the taxes and assessments were levied. In the absence of a contractual obligation to pay taxes and assessments, the duty to pay them rests on the lessor. See *Graham v. Raabe, supra.*

■ Subrogation is an equitable doctrine. This court well stated the doctrine in *Credit Bureau Corp. v. Beckstead,* 63 Wn.2d 183, 385 P.2d 864 (1963), when it said:

> Subrogation is a purely equitable doctrine, a fiction invented for the purpose of arriving at an obviously equitable result. *Omicron Co. v. United States Fidelity & Guar. Co.,* 21 Wn. (2d) 703, 708, 152 P. (2d) 716 (1944). It is founded in the facts and circumstances of each particular case and on the principles of natural justice. In general, it will be applied wherever any person, other than a mere volunteer, will suffer damage because of the unjust enrichment of another. The doctrine, however, will

not be applied if it would work injustice to the rights of those *having equal or superior equities*; nor will it be enforced against *a bona fide purchaser* for value without notice or one who, in good faith, has changed his position in reliance upon the act which subsequently is claimed to have been a mistake. (Italics ours.)

Subrogation is a consequence which equity attaches to certain conditions. It is not an absolute right, but one which depends upon the equities and attending facts and circumstances of each case.

■ It would be a gross misapplication of the doctrine of subrogation were we to hold that its cloak settles automatically upon one who has simply made a mistake, when it is a commercial transaction involving a consideration. Intervenor's relationship is governed by the law of contracts. Further, it is difficult to think of a situation in which a title insurance company could not claim unjust enrichment as to someone who might inadvertently benefit by their negligence. Either they insure or they don't. It is not the province of the court to relieve a title insurance company of its contractual obligation. Intervenor has not cited us authority to the contrary.

We have weighed and balanced the equities of the parties with regard to the legal and equitable rights of all of them and have decided that since plaintiff seeks equity, he in turn must do equity. In summary, we conclude that plaintiff is entitled to a decree of specific performance of his option to purchase the property (less lot 15) and is entitled to a conveyance free of encumbrances upon payment (1) of $7,000 forthwith and of (2) such sum as shall be necessary to make defendants Raabe whole, the sum to be paid within 90 days of its determination. Were we not to grant subrogation, plaintiff would be unjustly enriched at the expense of the Raabes, who paid off the encumbrances against the property plaintiff is now obtaining.

We cannot with complete accuracy determine the latter sum from the record before us. The case is, therefore, remanded to the superior court for its determination, either by agreement of the parties, or upon further hearing. In

its determination, defendants Raabe shall be credited with all sums advanced or expended by them, exclusive of attorney's fees, and shall be debited with rentals received and all sums paid them by the intervenors. We find no error in the denial of plaintiff's offset claim for alleged negligent maintenance of the theater. Interest at 6 per cent shall be computed on both debits and credits from date of their accrual.

Plaintiff shall recover costs on this appeal.

It is so ordered.

ROSELLINI, C. J., FINLEY and HAMILTON, JJ., and LANGENBACH, J. Pro Tem., concur.

November 21, 1966. Petition for rehearing denied.