Walter T. COY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20339.

United States Court of Appeals Ninth Circuit.

May 29, 1967.

———◆———

Joseph D. Holmes, Jr., Karr, Tuttle, Campbell, Koch & Granberg, Seattle, Wash., for appellant.

Richard M. Roberts, Acting Asst. Atty. Gen., Meyer Rothwacks, George F. Lynch, Attys., Tax Div., Dept. of Justice, Washington, D. C., William N. Goodwin, U. S. Atty., Gerald W. Hess, Atty., Seattle, Wash., for appellee.

Before CHAMBERS, POPE and HAMLEY, Circuit Judges.

CHAMBERS, Circuit Judge:

The government secured a judgment on May 17, 1965, against Coy for $282,-413.64. This was for federal admis-sions taxes plus interest for the years 1949, 1950 and 1951 and federal income taxes for the years 1942, 1944, 1945, 1947 and 1948. Internal Revenue's determinations of deficiencies in the two types of taxes were made and notices thereof given in the period January 8, 1953, to March 1, 1953.

The suit for collection was filed September 17, 1964. The central question here involves whether the six-year statute of limitations [1] was applicable to the government's action. Contrary to the district court, we hold on the particular facts here that it was.

After the assessment, Coy submitted on March 29, 1957, an offer of compromise of all of his taxes for $6,689.50. This sum was represented by a certified check drawn in favor of the Director of Internal Revenue.[2] The offer was made on a standard form which contained the stock provision that the statute of limitations was waived "for the period during which the offer is pending and for one year thereafter."

Coy, in writing, withdrew the offer on December 19, 1961.[3] Written notice that the government refused the offer was given on January 22, 1964. But there were intervening events to which we attach significance. The Internal Revenue Service, in due course, after April 5, 1957, notified Coy that it was considering prosecuting him for false representations made in his written offer as to the status of his affairs. The grand jury indicted him on April 14, 1960, and during September, 1960, he was tried and convicted on three counts, all on the falsities of his offer of compro-

---

1. Section 276(c) of the Internal Revenue Code of 1939. (All taxes involved accrued prior to the adoption of the Internal Revenue Code of 1954.)

2. The check was cashed by the director on April 5, 1957.

3. While we have attached no importance here to Coy's letter of December 19, 1961, written from the penitentiary, withdrawing his offer of compromise, it is odd that within one year from that date the government took no steps to reduce its assessment to judgment. It must have relied on its own view of the statute of limitations.

mise.[4] He was sentenced to three years in prison.[5] And a fine was imposed.

█ Normally, the law is that the civil and criminal sides of tax collection can operate independently and criminal prosecution has little to do with civil liability, and vice versa. A good example of this is United States v. Smith, (N.D. Ohio), 146 F.Supp. 104.

█ The purpose of tolling the statute is to give the proper agents time to consider and investigate the offer. Thus, the government may want to accept a taxpayer's offer for what it can collect, but still prosecute for the original falsity or fraudulence. So ordinarily it is reasonable that the government should have the statute tolled while it is considering the offer.

But here in the very offer of compromise the tax collectors found fraud and they arranged for Coy's prosecution. We have trouble with the concept that the government should have further time to consider an offer that reeked with discovered fraud. To have accepted the offer would have made those who accepted it as bad as Coy.[6] They would be subject to the same condemnation as the army contract officer who waived the fraud in United States v. National Wholesalers, 9 Cir., 236 F.2d 944, cert. denied 353 U.S. 930, 77 S.Ct. 719, 1 L.Ed.2d 724.

█ The sentence was imposed on September 30, 1960, and we hold that the statute of limitations started running again not later than September 30, 1961. If this be true, the suit for collection filed on September 17, 1964, was barred by the statute. Four years, one month and eleven days had run on April 5, 1957, when the collector received the compromise offer containing its waiver. Thus, at most the government had only one year, ten months and twenty days of limitation time after September 30, 1961.

It is possible, if it were necessary to decide, that the date of the indictment might be taken as the date of rejection of the offer. But that can be decided in some other case.

There is no evidence that our decision in Coy's case will deprive the government of anything substantial moneywise. In a case where it might, now forewarned, it will be able to act in time.

Further, from the departmental correspondence it would appear that a fair construction of it is that after the matter had been turned over to the Department of Justice for prosecution all the Internal Revenue Service was doing was trying to figure out a way that it could keep the deposit of $6,689.50. A memorandum of September 17, 1963, from the regional counsel to the district director says: "Before making such application,

4. The fraud was this: Shortly before the offer in compromise, Coy sold his White Center Theatre to one C. W. Olberg. (Whether Olberg was a friend is not clear.) The Internal Revenue Service cooperated with Coy in releasing its liens against the theatre property on his representation that the sale price was $62,-500. Out of this amount, the government received a net amount of about $45,000.

In making the compromise offer, Coy represented that the tendered money was from a loan obtained to enable him to settle his taxes. But the revenue agent's search turned up the fact that the $6,-689.50 tendered was in truth the balance of $7,500 paid by the purchaser "under the table." In other words, the true selling price for the theatre was $70,000. No private person but Coy actually had any claim to the money tendered.

5. It also appears in the record that Coy had previously been to the federal penitentiary because of his troubles with some of his tax returns.

6. There might be circumstances, even though the offer of compromise was the subject of criminal redress, where the prosecution could not be considered a rejection of the offer. For example, if the money tendered were really that of a third party, prosecution for some false facet of the statement might not be inconsistent with considering and later accepting the offer in compromise. But here Coy was being told: "The money is not that of another and we have a right to it anyway, independent of any offer of compromise."

however, it is believed that the offers should be formally rejected and the taxpayers advised when credited." This is fair evidence that at a prior time I. R. S. had abandoned consideration of the offer.

■ We next reach the question of whether the government may keep the $6,689.50 which Coy offered in compromise. As noted,[7] Coy got the compromise money by virtue of a clandestine payment from the buyer of his White Center Theatre, the purpose of the payment being to hide the money from the government, which had tax liens on the theatre property but had cooperated in the sale. Thus this is not the normal case where a taxpayer proffers a sum of money along with an offer of compromise and, upon rejection of the compromise offer by the government, requests that the money be refunded. 26 U.S.C. § 7809(b) (1); Int. Rev.Reg. 301, 7122–1(d) (4). Ordinarily, such deposits must be scrupulously insulated from the tax gatherer confiscating them. If they can be grabbed regularly, pretty soon they won't be proffered.[8] Here we are faced with a situation where a taxpayer really stole some money from the government by the device of misrepresenting the sale price of property on which the government had tax liens and then turning around and offering the government the same money in the form of a compromise tax settlement offer. We agree with the district court that Coy's original misrepresentation by which he "conned" the government into lifting its tax liens on the White Center Theatre estops him from demanding return of the money.

The decision of the district court that Coy shall suffer a judgment for $282,413.64, plus interest until paid, is reversed. The decision of the district court that the United States may keep the $6,689.50 submitted as part of the offer in compromise is affirmed.

7. See footnote 4.

8. We have absolutely no quarrel with cases indicating that a taxpayer may demand the return of his money when a compromise offer is rejected, no matter what the reason for rejection. Boughton v. United States, 12 Ct.Cl. 330; Metcalf v. Commissioner of Internal Revenue, 16 B.T.A. 881; Moskowitz v. United States, 285 F.2d 451, 152 Ct.Cl. 412.