[No. 39834.   Department One.   December 4, 1969.]

GARY GUY COY, *Appellant,* v. BUFORD W. RAABE *et al., Respondents.*\*

\*Reported in 462 P.2d 214.

*Allison & Allison*, by *Daniel B. Allison II*, for appellant.
*C. Henry Heckendorn*, for respondents.

FINLEY, J.—This is the third and hopefully a final opinion of this court in this one case. The two previous opinions, *Graham v. Raabe*, 62 Wn.2d 753, 384 P.2d 629 (1963), and *Coy v. Raabe*, 69 Wn.2d 346, 418 P.2d 728 (1966), established that Gary Guy Coy had a valid lease and option to purchase certain real property owned by Buford Raabe, but that in order to exercise that option Coy had to reimburse Raabe for the money advanced by Raabe in purchasing and maintaining the property.

The chain of events leading up to the present appeal is extremely complex. However, for the most part they have been set forth in the two previous opinions. We believe that little would be added by further repetition. In essence, the present case arises out of our previous decision that appellant Coy was entitled to exercise an option to purchase certain property presently owned by respondents Raabe upon payment to Raabe of the option price of $7,000 plus "such sum as shall be necessary to make defendants Raabe whole . . ." 69 Wn.2d at 351, 418 P.2d at 731. The parties were unable to agree about the latter sum and sought a determination by the superior court. The primary issue in the appeal before us is whether the superior court, on remittitur, correctly applied the directions of this court:

> In [the superior court's] determination, defendants Raabe shall be credited with all sums advanced or expended by them, exclusive of attorney's fees, and shall be debited

with rentals received and all sums paid them by the intervenors.

69 Wn.2d at 351, 418 P.2d at 732.

The trial court sought to appoint a mutually acceptable accountant to assist the court in making this determination. Coy's counsel objected to this procedure, bringing in his own accountant as an expert witness. Coy's accountant stated that $15,855.47 was the amount required to make Raabe whole. The trial court accepted the accounting proposed by Raabe in substantial part, holding that Coy could exercise the option by paying Raabe $35,622.84 in addition to the $7,000 option price already paid. This appeal followed.

The difference between the sum proposed by Coy and that proposed by Raabe is attributed to a number of factors: (1) Coy contends that the cost of purchasing and maintaining lot 15 (a lot adjacent to the theater property in question acquired by Raabe but not covered by nor subject to the Coys' option to purchase) should be offset against any payments to reimburse Raabe. He further contends that this offset should consist of one-eighth of the payment for the entire theater property plus one-eighth of Raabe's adjusted disbursements. (2) Coy's accountant used a different method of computing interest on the $25,000 downpayment made by Raabe. That payment consisted of a $13,000 loan from Raabe's parents, a $7,500 loan from Guaranty National Bank and $4,500 of Raabe's own money. Coy contends that 6 per cent interest should run from the dates of the loan re-payments instead of from the date Raabe initially made the downpayment. (3) There are further discrepancies involving a dispute as to whether or not certain payments are "attorney fees." (4) Some relatively minor discrepancies stem from a difference about the starting date for determining interest.

The first discrepancy, the offset claimed by Coy regarding lot 15, produces the major portion of the accounting difference between the contending parties in this beleaguered lawsuit. We note in passing that lot 15 was a vacant

lot, used mainly for occasional parking and Christmas tree sales. The other property is well developed and integrated as to the theater located on it. Yet Coy contends that the offset for lot 15 should be the "cost of lot 15" (one-eighth of the original $50,000 purchase price) plus one-eighth of the various disbursements made by Raabe (which also includes payments on the cost of the lot). The result is obvious. Under Coy's accounting, Raabe would have to offset the cost of lot 15 twice, with the result that the claimed offset is roughly one-fourth of the value of the total developed property.

Were we considering this appeal for the first time, we might direct that some offset for the value of this small undeveloped lot might be allowable. But we are not. On the previous appeal we directed that Raabe "shall be debited with rentals received and all sums paid them by the intervenors." An offset for lot 15 is neither. The decision in the previous case is the law of the case. We will not now say that the trial judge erred when he refused to go beyond the directions of our previous opinion.

The other three areas of claimed discrepancy raise factual questions. We have frequently cited *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959), for the proposition that this court will not "substitute its findings for that of the trial court." *Supra* at 575.

The issue in that case involved a legal action rather than an essentially equitable proceeding. The statute involved, the appeal act of 1893 (Laws of 1893, ch. 61, p. 119), applied in section 21 to "actions legal or equitable . . ." The act was subsequently repealed. Laws of 1957, ch. 7, § 10 (27), pp. 25, 26. In view of this repeal and the merger of law and equity in this state, we would apply the same standard or rule of review in the equitable proceeding of the instant case.

We can sympathize with the trial judge's dilemma as he was faced with the two widely divergent versions of the facts by the two accountants. Perhaps it would have been wise for him to have appointed accounting assistance even

over the objection of the appellant Coy. But Coy cannot now object that he did not seek such expert help. Of course, if the bargain for the theater property is not now considered desirable by Coy, under the order of the trial court he does not have to take the theater property. Further, he is entitled to the return of his $7,000 and he need not pay any of the expenses which the trial court found were incurred by Raabe.

■   We have noted continuously in this case that subrogation is an equitable doctrine. In any equitable proceeding, the trial court has certain inherent discretion which can be exercised.

This principle was enunciated in one of the earliest decisions of this court. After reviewing the equitable considerations prompting the particular division of property interests by the trial court, the Territorial Supreme Court noted "[i]t is true the judge who tried this suit in the Court below did not state the legal basis on which the order was formed as fully as he might, but that cannot affect the correctness of the degree, nor render the order erroneous." *Ward v. Buckley*, 1 Wash. Terr. 279, 282 (1870). *See also Carstens Packing Co. v. Cox*, 47 Wn.2d 346, 287 P.2d 486 (1955), for an example of the deference which this court accords to determination of the trial courts of complex accounting questions in equitable proceedings.

As long as there is some basis for the court's determination, the trial court is not limited in its consideration to what one accountant or another says is proper accounting procedure. In weighing and balancing the equities of the parties, the application of generally accepted accounting procedures is only one factor which should be considered by the court in making its final determination. The financial hardships to Raabe, the use of his credit to purchase the property, his status as a bona fide purchaser were all before the trial court. Also the trial judge doubtlessly was aware that Coy stood to get the property free from the tax liens which had initially been levied because of the considerable

tax problems of Coy's father.[1] We do not think the amount found by the court was unreasonable under the testimony. *Hanna v. Haynes,* 42 Wash. 284, 84 P. 861 (1906).

Coy also argues that the court erred in failing to grant an additional continuance after his original counsel died and his present counsel, Daniel B. Allison II, was substituted as the attorney. At the time of the determination by the trial court, the younger Coy was in Korea with the armed forces. He contends that the failure to grant the continuance was in violation of his rights under the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C. § 521, which provides:

> At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act [sections 501-548 and 560-590 of this Appendix] unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service. (Oct. 17, 1940, ch. 888, § 201, 54 Stat. 1181.)

The act provides an exception when the court decides that the ability of the party "is not materially affected by reason of his military service." The question at issue involved the debits and credits attributable to Raabe. We do not believe Coy's presence or absence could have materially affected that determination. The correctness of the trial court's determination is further bolstered when we consider the extreme delay which has characterized this case from the outset.

We have carefully considered the other related assignments of error in appellant's brief and do not believe

---

[1] Much of the complex tangle of interests in the theater property is attributable to the attempts of Coy's father, Walter T. Coy to evade federal taxes. As a result of this attempted evasion, Coy senior spent several years in federal penitentiary. For a related discussion of the tax problems which in part led to the present case, *see United States v. Coy,* 65-2 CCH U.S. Tax Cas. ¶ 9458 (W.D. Wash. 1965), reversed in part, 377 F.2d 925 (9th Cir. 1967).

that they merit further discussion. There remains the further question of the present status of the judgment of the trial court. The judgment provided that "if Plaintiff does not pay such amounts within [90 days], then Defendants Raabe shall deliver to Plaintiff the $7,000 heretofore tendered by Plaintiff toward the purchase price, and title to the property is thereupon quieted in the Defendants Raabe." A supersedeas bond was set in the amount of $20,000. Coy, in Korea at the time, did not provide the bond. It is possible that the ability of Coy to comply with the judgment of the court was "materially affected by reason of his military service." Accordingly, the judgment should have been stayed at least until 3 months after Coy got out of the service, which was in September 1967. Coy has made no subsequent effort to stay the judgment. The judgment, however, was also dependent upon Raabe's return of the $7,000. This has not been done. Accordingly, we hold that title has not yet been quieted. If Coy pays the amount found by the trial court within 30 days after the filing of this decision, he shall be entitled to a transfer of the title of the property. If he does not pay that amount, title to the property will be quieted in respondents Raabe upon the return of the $7,000 plus 6 per cent interest on that sum from March 27, 1967.

Respondents shall recover costs on this appeal.

It is so ordered.

HUNTER, C. J., WEAVER and HAMILTON, JJ., and ENNIS, J. Pro Tem., concur.

---

January 21, 1970. Petition for rehearing denied.