T. G. W. REALTIES, Inc., Plaintiff, *v.* LONG ISLAND BIRD STORE, INC., and Another, Defendants, and SAMUEL ALTMAN, Impleaded Defendant.

Supreme Court, New York County, June 5, 1934.

*Delatour, Kennedy & Miller* [*Harold M. Kennedy* and *George D. Zahm* of counsel], for the plaintiff.

*Leo B. Lebovitz* [*Eugene H. Sherpick* and *James J. Regan* of counsel], for defendants Long Island Bird Store, Inc., and another.

*Harry L. Kreeger* [*Harry L. Kreeger* and *William Roth* of counsel], for the impleaded defendant.

ROSENMAN, J. Samuel Altman and his wife Bertha had been tenants by the entirety of 107 Flatbush avenue, Brooklyn, since 1913. During that period and through 1925 Samuel Altman conducted his very prosperous business in the premises. He paid no rent therefor to his cotenant.

In December, 1925, he made an outright gift of his business, free from all liabilities, to his two sons, Benjamin and Irving. On January 1, 1926, the sons went into possession of the business as owners, and have conducted it ever since in the same premises. They agreed, at the time of the gift, to pay Samuel Altman rent for the premises at the rate of $625 monthly. This rent was paid until November, 1932, when payment was discontinued.

Samuel Altman in 1929 had purchased another parcel of property on Lafayette street, Brooklyn, subject to two mortgages. The facts surrounding this purchase are in dispute. He claims that it was bought on the express agreement of his sons that they would pay all of the carrying charges on the property on the theory that it was contemplated that the sons would eventually move their business into the new building. The sons deny the making of this agreement, although their books of account indicate that they continuously paid these charges, not as a loan to their father but as a regular expense. The time came when the sons announced that

they would no longer continue to pay them. Foreclosure of the mortgage on the property was commenced. Samuel Altman, in order to avoid paying the deficiency judgment which was imminent, thereupon proceeded to dispose of his attachable property and also to remove a great deal of it out of the State of New York. On December 3, 1932, he conveyed to this plaintiff his right, title and interest as a tenant by the entirety in the Flatbush avenue property, together with other assets. It is claimed by the plaintiff and by Samuel Altman that the consideration for this conveyance was $16,000 in cash. The defendants contend that no consideration was passed, and that the $16,000 was in fact the property of Samuel Altman used to lend color to a wholly fictitious transaction.

The plaintiff served notice of the assignment on the sons. Upon their refusal to pay the rent of $625 per month, this action was commenced by the plaintiff for several months' rent. The defendant corporation, Long Island Bird Store, Inc., for the purposes of this action, stands in the shoes of the sons by assignment from them and by assumption of their liabilities. The defendant Bertha Altman is joined as a party defendant because she is the other tenant by the entirety, and has refused to become a party plaintiff. No affirmative claim is made against her for any money. Defendant alleges that immediately upon receiving notice from the plaintiff of the assignment, the sons went to their mother, Bertha Altman, the other tenant by the entirety, and without the knowledge or consent of the plaintiff, entered into an agreement with her reducing their rent to $350 per month. One-half of this amount, or $175 per month, has been paid by the defendant Long Island Bird Store, Inc., to Bertha Altman, but the plaintiff has received no rent whatsoever.

After this action was commenced, the defendants by motion brought in the impleaded defendant, Samuel Altman, and demanded equitable relief as against him. The Long Island Bird Store, Inc., demands that the assignment of his one-half interest in the premises be set aside as fraudulent, and that he be compelled to pay to it all of the advances which the sons claim to have made for the carrying charges of the Lafayette street property. It also claims that Samuel Altman owes it money by reason of certain transactions connected with another piece of property on Buffalo avenue in Brooklyn, the details of which are not necessary to this opinion. Bertha Altman demands that her husband, Samuel Altman, account to her for her one-half share of all of the rent which he has received from the Flatbush avenue property as a tenant by the entirety. She also demands that the conveyance of her husband's moiety be set aside as fraudulent, and that a lien attach thereto for the share of the rent which she claims is due her.

I find as a fact that nothing was due from Samuel Altman to his sons on December 3, 1932, the date of the assignment, arising either from the Lafayette street property or the Buffalo avenue property. The claim of indebtedness is made as an afterthought by ungrateful sons, wholly forgetful of their father's generosity to them, eager if possible ultimately to insure for themselves their father's interest in the property which he has conveyed away. On the other hand, I find as a fact that the conveyance by Samuel Altman was made fraudulently with the actual intent of preventing Dayton, the holder of the mortgages on the Lafayette street property, from recovering his deficiency judgment.

Since Irving and Benjamin Altman were not creditors of their father on the date of the conveyance, the counterclaim of their assignee, Long Island Bird Store, Inc., against Samuel Altman cannot prevail. Only creditors may avail themselves of the remedies provided in article 10 of the Debtor and Creditor Law.

The same conclusion is reached with respect to the defendant Bertha Altman. Her status as a creditor is to be determined by the validity of her claim for her share of the rents collected from the Flatbush avenue property by Samuel Altman since January 1, 1926. Her rights as a tenant by the entirety were those of a tenant in common with the right of survivorship. (*Matter of Goodrich* v. *Village of Otego*, 216 N. Y. 112.) Although she and her husband had been tenants by the entirety since 1913, she had never received or made any legal demand for her share of the rents. While her husband was conducting his own business in the premises, he paid no rent. She at no time asked for that which was due her. When he gave his business to his two sons she was apprised by him of the arrangement under which they were to pay him a rental of $625 per month. She acquiesced in the plan. She made no claim for any portion of the agreed rent; nor did she indicate any intention of doing so in future. In fact she did not even assume to have any right to participate in the matter or to fix the amount to be paid.

Until April, 1930, they lived together in a common household. He paid all the expenses of maintaining their home on a scale admittedly consonant with his financial condition and general station in life. In April, 1930, marital difficulties arose which resulted in a separation. Thereafter he made provision for her maintenance by turning over to her all of the monthly rents of other property which he owned individually. She continued to remain silent as to her share of the rent of the Flatbush avenue property. She was obviously content to permit the old arrangement to continue, relying on the willingness of her husband to provide her with everything she was reasonably entitled to require from him.

On December 3, 1932, her husband made the conveyance complained of in these counterclaims. Then, for the first time, Mrs. Altman decided to make claim for her share of all the back rent. It is not necessary to discuss the reasons which induced her suddenly to assert her rights which she had ignored during all these years of common ownership. Her long period of acquiescence has resulted in a waiver of her claims. Where a wife permits her husband to collect all of the income from her separate estate and use it for his own purposes, or to pay the household and family expenses therefrom, a gift of the income from the wife to the husband is presumed to have taken place. She cannot later demand that he account to her for it. She is not permitted to induce her husband to maintain a standard of living based upon her consent that he keep and use the income and then revoke that consent and insist that he return it. The injustice which would result from such conduct is amply demonstrated by the facts of this very case. This rule, founded not on technical considerations of waiver or estoppel, but rather on equitable considerations of justice and fair play, has been followed by the courts of this and many other States. (*Smith* v. *Smith*, 125 N. Y. 224; *Van Sickle* v. *Van Sickle*, 8 How. Pr. 265, 270; *Lyon* v. *Zimmer*, 30 Fed. 401; *Jones* v. *Davenport*, 44 N. J. Eq. 33; *Williams* v. *Williams*, 146 Tenn. 1; 236 S. W. 926; *Roper* v. *Roper*, 29 Ala. 247; *Bristor* v. *Bristor*, 93 Ind. 201; *Crowley* v. *Crowley*, 167 Mo. App. 414; *Lyon* v. *Green Bay & M. Ry. Co.*, 42 Wis. 548; *Brell* v. *Brell*, 143 Md. 443.)

Not until the permission is specifically revoked by the wife does the husband's liability arise to account to her for income thereafter received. No such revocation occurred while the Altmans lived together or thereafter during the period of their separation. Financially, all went on as before. Mr. Altman continued to support Mrs. Altman, though they lived apart. The principle of law enunciated does not depend on the fact of a joint household. The gift may be presumed though donor and donee live separately. Acquiescence may be continued though the joint household be disintegrated. The income need not itself necessarily be spent for common expenses or the joint benefit of both. (*Williams* v. *Williams*, 146 Tenn. 1; 236 S. W. 926; *Denny* v. *Denny*, 123 Ind. 240.) This rule does not, of course, prevent claim for future income once the permission has been revoked. Long silence forecloses the wife from speaking out now for what was hers in the past. It does not seal her lips for what is due her presently or in future.

It was not until December, 1932, that Bertha Altman revoked her consent. Although she may share equally in all the income

after December 1, 1932, she has made a gift thereof to her husband for the period prior thereto. Not being a creditor, therefore, her counterclaim against Samuel Altman likewise cannot prevail.

The conveyance made by Samuel Altman was unquestionably made with actual intent to defraud Dayton, the creditor who was about to obtain a deficiency judgment. The conveyance may be set aside under section 276 of the Debtor and Creditor Law by any one who was a creditor of Samuel Altman on the date of the conveyance. It is not necessary that that creditor be Dayton himself. Any one who can establish himself as a creditor as of the date of the conveyance whose debt remains unpaid, has the right to complain. While I do not find that the conveyance rendered the grantor insolvent under section 273 of the Debtor and Creditor Law, this conclusion is unimportant in view of my determination that the conveyance violated section 276 of the statute.

No creditor appears, in this action at least, to set aside the conveyance. Although grave doubt exists as to whether the plaintiff itself was a *bona fide* purchaser and whether the cash used was actually the property of the plaintiff or of Samuel Altman, those questions need not be determined until one who is in fact a creditor appears to question the conveyance. Until that is done the conveyance between the grantor and grantee is effective. The grantor cannot compel a reconveyance to himself. (*Simis* v. *Simis*, 146 App. Div. 655; *Robinson* v. *Stewart*, 10 N. Y. 189, 196; *Ludlam* v. *Ludlam*, 194 App. Div. 411, 414, 415; affd., *sub nom. Ludlam* v. *Conn. Trust, etc., Co.*, 232 N. Y. 615; *Bolt* v. *Rogers*, 3 Paige, 154, 157, 158.) The grantee is entitled to his rent until the conveyance is annulled.

There remains only the determination of the amount of rent which the plaintiff may exact. The attempt on the part of the tenant to reduce the rent by agreement with Bertha Altman without the consent of her co-owner cannot succeed. No agency existed which authorized Mrs. Altman to act for the plaintiff. She had neither authority from the plaintiff nor power inherent in her ownership to fix a new rental without the consent of the plaintiff. (*Valentine* v. *Healey*, 158 N. Y. 369; *Hurant* v. *Faerber*, 125 Misc. 262.) Until a new rent was legally agreed upon, the defendant continued in possession as a month-to-month tenant under the old rent of $625 per month. If it deemed the rent excessive, it had, and still has, the right to move. *Valentine* v. *Healey* (178 N. Y. 391), relied upon by the defendant, is not authority to the contrary. In that case Healey, the owner in common, was himself in possession as one of the partners of the lessee. The decision in the case rested upon that fact and upon the ancient

doctrine which gives to each tenant in common the right to possession of the premises. Mrs. Altman was not herself in possession. It is not claimed that she was a partner or in any way interested in the defendant. Possession by the defendant was not her possession. The attempted modification of the rent cannot affect the rights of the plaintiff. During the trial decision was reserved on the motion to strike out the evidence of the conversation with Mrs. Altman as to the reduction of rent. The motion is now granted. For the same reason, the motion to strike out the testimony of Davenport, the real estate expert, as to the reasonable rental value of the premises, is granted. The agreed rental remained effective until validly changed, so long as the defendant continued in possession of the premises.

While judgment might be rendered for the plaintiff for the full amount of rent due for each month, leaving to Mrs. Altman only her right to collect her share from the plaintiff, precedent exists which permits the rendition of judgment for the plaintiff's share alone, especially where the lessee has received notice as here from one tenant in common not to pay the entire rent to the other, or where one has settled the amount of her claim herself. (*Decker* v. *Livingston*, 15 Johns. 479; *Jones* v. *Felch*, 3 Bosw. 63; *Cole* v. *Patterson*, 25 Wend. 456; *Johnson* v. *Moxley*, 113 So. [Ala.] 651; *Jackson* v. *Moore*, 94 App. Div. 504.) Justice will be done by such disposition here, and practical considerations urge it. The parties will probably remain inimical. Litigation will be reduced if each tenant in common receives his own share until survivorship determines the ultimate ownership, rather than to be relegated to accounting proceedings against each other. This is particularly true here where the rent is a net rent, and no expenditures are necessary therefrom by the tenants in common.

Accordingly judgment is directed in favor of the impleaded defendant Samuel Altman against each defendant on their separate counterclaims. Judgment is directed in favor of the plaintiff for its one-half share of nineteen months' rent at $325 per month or a total of $5,937.50, with interest to be computed. Exceptions allowed to defendants. Ten days' stay and sixty days to make a case.