[No. 36652. Department Two. October 24, 1963.]

THE CREDIT BUREAU CORPORATION, *Respondent,* v. LESLIE L. BECKSTEAD *et al., Appellants.*\*

*Comfort, Dolack & Hansler* and *Hal D. Murtland* (*Patrick C. Comfort,* of counsel), for appellants.

*Metzger, Blair & Gardner,* for respondent.

\*Reported in 385 P. (2d) 864.

WEAVER, J.—This is an appeal from an order vacating a partial satisfaction of judgment which the trial court found had been filed July 28, 1961 as a result of a mistake of fact.

Exclusive of taxes and assessments, the real property involved in this litigation was, on July 28, 1961, subject to the following recorded liens:

(1) May 1, 1959, The Credit Bureau Corporation (plaintiff and respondent) secured a default judgment in Pierce County against the owners of the property, Leslie L. and Perry L. Beckstead and their wives, for $2,084.20.

(2) July 30, 1959, the Becksteads executed a mortgage on approximately one-half of the real property in question to Morton Bissell to secure an obligation of $2,175.00.

(3) August 31, 1959, the Becksteads exectued their promissory note to Gray Company, Inc. (appellant) for $3,438.34. The note was secured by a mortgage upon the property. $2,960.70 is now due on the note.

(4) Thereafter, six judgments totaling about $1,300 (including two in favor of The Credit Bureau) were entered against the Becksteads.

In March, 1961, at the request of a real estate broker, who had negotiated a sale of the property to Fred W. Gordon for $4,000 cash, the Commonwealth Title Insurance Company prepared a report reflecting the status of the title to the property. The title report disclosed delinquent real property taxes, assessments for local improvements, and the seven judgments listed as (1) and (4) *supra*. The report did *not* disclose the Bissell or Gray mortgages; they had been overlooked by the title company.

Taxes, assessments, real estate broker's commission, title insurance costs, recording fees, revenue stamps, and excise tax were paid with Gordon's money; the balance of the $4,000 was paid on the judgments. The Credit Bureau Corporation received $1,910.41 on its judgment of May 1, 1959 and, on July 28, 1961, filed a partial satisfaction thereof. The Becksteads conveyed the property by warranty deed to Fred W. Gordon.

Upon discovering its mistake, the Commonwealth Title Insurance Company purchased the Bissell mortgage, and

offered to pay to the Gray Company the amount it could have expected to realize from the foreclosure of its mortgage, recognizing taxes, assessments, the Credit Bureau's judgment of May 1, 1959, and the Bissell mortgage as prior to its mortgage.

November 22, 1961, appellant Gray Company, Inc. commenced an action to foreclose its mortgage, naming as parties defendant the Becksteads, Fred W. Gordon (purchaser from the Becksteads), Morton L. Bissell (holder of the prior mortgage now owned by Commonwealth Title Insurance Company), The Credit Bureau Corporation (holder of the judgment of May 1, 1959, prior to the Gray mortgage), and the Commonwealth Title Insurance Company.

December 26, 1961, Gray Company, Inc. was served in the instant case with an order to show cause why The Credit Bureau's partial satisfaction of judgment should not be vacated. Hearing was set for January 5, 1962.

December 28, 1961, appellant Gray Company, Inc. had judgment entered in its foreclosure action, which judgment held Gray Company's mortgage superior to the rights of The Credit Bureau Corporation and all persons claiming through it. In oral argument before this court, counsel announced that this judgment has been vacated.

April 5, 1962, the trial court entered an order vacating the partial satisfaction of judgment filed by The Credit Bureau Corporation on June 28, 1961, because it

". . . was filed and entered by reason of a mistake of fact and that none of the parties hereto would be prejudiced by vacating said partial satisfaction."

The rights of the parties are intertwined. Gordon purchased, Becksteads warranted, and Commonwealth Title Company guaranteed a clear title to the property. Upon discovery of the mistake, Commonwealth purchased the Bissell mortgage and

". . . has now paid to the said plaintiff [The Credit Bureau Corporation] additional funds required to purchase said judgment [of May 1, 1959] in its entirety and is entitled to, and plaintiff has agreed to assign to the said Commonwealth Title Company said judgment in its entirety."

■■■■ Since Gray Company, Inc. is a party to this proceeding, we deem The Credit Bureau's motion to vacate the partial satisfaction of judgment sufficient to present the issue of subrogation in the circumstances of the instant case. Regardless of whether the relief is sought by motion or by independent action, the remedy is governed by equitable rules. The ultimate question is whether it is inequitable for appellant Gray Company, Inc. to avail itself of the advantage gained by the satisfaction of judgment which was mistakenly entered.

Subrogation is a purely equitable doctrine, a fiction invented for the purpose of arriving at an obviously equitable result. *Omicron Co. v. United States Fidelity & Guar. Co.,* 21 Wn. (2d) 703, 708, 152 P. (2d) 716 (1944). It is founded in the facts and circumstances of each particular case and on the principles of natural justice. In general, it will be applied wherever any person, other than a mere volunteer, will suffer damage because of the unjust enrichment of another. The doctrine, however, will not be applied if it would work injustice to the rights of those having equal or superior equities; nor will it be enforced against a bona fide purchaser for value without notice or one who, in good faith, has changed his position in reliance upon the act which subsequently is claimed to have been a mistake.

The rule is well stated in Restatement, Restitution § 162:

"Where property of one person is used in discharging an obligation owed by another or a lien upon the property of another, under such circumstances that the other would be unjustly enriched by the retention of the benefit thus conferred, the former is entitled to be subrogated to the position of the obligee or lien-holder."

The instant case is similar to *Pipola v. Chicco,* 274 F. (2d) 909 (C.A. 2d; 1960). The title company for the purchaser failed to find and report a recorded federal tax lien which was junior to a recorded first mortgage. The purchaser paid the first mortgage from the proceeds of another mortgage; it was released of record. The title company for the second mortgagee also failed to find the tax lien. Thus the priority of the tax lien was advanced, just as appellant's

mortgage will be advanced in priority if respondent's judgment is deemed to have been satisfied.

The court noted the government's suggestions that plaintiff might sue his grantor for breach of warranty or the title company for its error; nevertheless, the court held plaintiff entitled to the priority of the mortgage he had caused to be satisfied, stating:

" . . . In paying off [the mortgage] . . . plaintiffs conferred a benefit on the government as a result of a mistake of fact, to wit, their ignorance of the government's tax lien. . . . To prevent unjust enrichment of the government, equity will preserve for the benefit of [the plaintiffs] the senior encumbrance which they caused to be discharged. American Law Institute, Restatement of Restitution, § 162. The Thrift v. Michaelis, 1932, 259 N.Y. 302, 181 N.E. 580; Burgoon v. Lavezzo, 68 App. D.C. 20, 92 F. 2d 726, 113 A.L.R. 944. . . ."

Recently, we said:

" . . . In ascertaining whether subrogation is appropriate, as in other cases of equitable relief, the court must weigh and balance the equities of the parties, having due regard to the legal and equitable rights of others. . . ." *Graham v. Raabe*, 62 Wn. (2d) 753, 758, 384 P. (2d) 629 (1963).

It is undisputed that respondent's judgment was a lien on the property prior to appellant's mortgage; that the judgment was partially satisfied of record due to a mistake of fact. We cannot appreciate how appellant, in equity and good conscience, or with any show of reason or justice, can claim to be injured by reinstatement of the judgment. Appellant has not changed its position in reliance upon the satisfaction and is in no way prejudiced by the reinstatement of the judgment. Appellant is in the same position it occupied before the mistake was made, except that the value of its security has been benefited by the payment of taxes and assessments against the property. We have not overlooked the fact that appellant has commenced an action to foreclose its mortgage. It did so with full knowledge of existing facts, for it joined as parties defendant all those having claims against the property *prior* to its mortgage.

We conclude that the equities of the case require that the order vacating partial satisfaction of judgment be affirmed.[1]

It is so ordered.

OTT, C. J., DONWORTH, FINLEY, and HAMILTON, JJ., concur.

[1]Reinstatement of the judgment cannot, of course, affect the rights of innocent third parties who may have acquired an interest in or a lien upon other lands owned by the Becksteads subsequent to July 28, 1961, the date the partial satisfaction was filed of record.