In re Ernest L. PAOLINI and Hildegarde A. Paolini, a/k/a Betty Paolini, Debtors.

Bankruptcy No. B 80–11129 C.

United States Bankruptcy Court,
W. D. New York.

May 19, 1981.

William E. Lawson, Buffalo, N. Y., for trustee.

Jaeckle, Fleischmann & Mugel, Buffalo, N. Y., for Liberty National Bank; Eugene J. Smolka, Buffalo, N. Y., of counsel.

Schaus & Schaus, Buffalo, N. Y., for debtors; Robert C. Schaus, Buffalo, N. Y., of counsel.

## MEMORANDUM

JOHN W. CREAHAN, Bankruptcy Judge.

The question before the Court concerns the nature and extent of certain interests in real property known as 27 Fisher Street, Buffalo, New York. The proceeding before the Court is a hearing requested on the trustee's notice of intention to sell the realty in question. Although the issues involve substantial rights and have arisen in a rather unorthodox fashion, the parties in interest have stipulated to the facts and requested the Court to sort out the various interests without recourse to more formalized proceedings.

### I.

Prior to October 17, 1979, Ernest and Hildegarde Paolini, husband and wife, held title to the realty as tenants by the entirety. On that date, Ernest deeded his interest to Hildegarde for "nominal consideration." At the time of this transfer, both debtors were obligated to Liberty National Bank and Trust Company (Liberty) as personal guarantors on a corporate obligation. At the same point, the corporate obligation

was in default and demand for payment had been made on the debtors. Thereafter an action was commenced by Liberty against both debtors, and on January 25, 1980, judgment by default was entered against them in the office of the Clerk of Erie County, the county of the debtors' residence. In the interim, on December 4, 1979, Hildegarde conveyed the entire interest in the realty to a daughter, Darlene Leone. No consideration was paid for this transfer. Thereafter, on May 13, 1980, Darlene by deed reconveyed the property to her parents, Ernest and Hildegarde. Darlene's deed was recorded on May 16, 1980. Later the same day, the debtors filed their petition for relief under Chapter 7 of the Code. 11 U.S.C. Chapter 7.

The schedules filed in the case set forth the real property at 27 Fisher Street as having a value of $30,000. There is a valid mortgage lien of $6,341.75 against the property. The debtors each claim an exemption of $7,500 in their residence by virtue of 11 U.S.C. § 522(d).

It is the position of counsel for Liberty that the bank has a lien against the real property at 27 Fisher Street as of January 25, 1980, the date judgment in the sum of $14,837.43 was docketed against the debtors. Liberty contends that this "lien" affixed to the realty outside of the "90 day" provision of 11 U.S.C. § 547(b) and is unassailable by the trustee. They further maintain that, although neither judgment debtor was a record holder of title on that date, this fact has no bearing on their position. Even though Hildegarde was not in title on that date, they are willing to recognize her claim to a $7,500 exemption (11 U.S.C. § 522(d)(2)), but not that of Ernest. As the bank was a creditor of both at all times, how they differentiate between the two is not clear to the Court.

The trustee, on the other hand, maintains that Liberty's judgment became a lien on the realty on May 16, 1980, the date on which the deed from Darlene back to Ernest and Hildegarde was recorded. The trustee argues further that this lien attachment is a transfer occurring within "90 days" of the filing of the debtors' petition under Chapter 7. He concludes that he may avoid this transfer pursuant to 11 U.S.C. § 547(b). The debtors support the trustee's position. They further maintain that each is entitled to a $7,500 exemption in the realty.

On May 12, 1980, yet another creditor docketed a judgment against the debtors. That interest is not in issue here. It appears to be assumed by all parties that the lien of that judgment can and will be avoided by the trustee. Without considering the merit of that contention, the Court will assume it has no bearing on the present issue. While not specifically set forth in the stipulation of the parties, it is implicit both in their stipulation and in their briefs that, in sorting out the contentions of the parties, the Court is to assume the presence of all of the elements required under section 547(b) of the Code, other than the "90 day" provision.

Liberty points out that the conveyance by Hildegarde to her daughter, Darlene, was fraudulent as to them by virtue of the provisions of New York's Debtor and Creditor Law, section 273–a. (McKinney Supp.). None of the other parties here take exception to that statement. It is clear that under the facts as stipulated, Liberty is correct. In support of their argument that they have a lien on the realty at 27 Fisher Street as of January 25, 1980, Liberty relies on the provisions of section 278.1 of the Debtor and Creditor Law. (McKinney 1945). That section reads in full as follows:

§ 278. Rights of creditors whose claims have matured

1. Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such purchaser.

a. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

b. Disregard the conveyance and attach or levy execution upon the property conveyed.

The "creditor" here, Liberty, has instituted none of the proceedings set forth in the statute. Despite their failure to do so, they claim a lien as of January 25, 1980. They claim that section 278(1)(b) "voids the original conveyance of the property from the Paolinis to their daughter on December 21, 1979 [and] voids the transfer whether or not the creditor attaches or levies execution upon the property." In short, they appear to believe that the statute is self-operating. This interpretation seems to the Court to fly in the face of the most fundamental concept of "due process." Such a result would deny an alleged fraudulent transferee the opportunity to defend his title.

Article 10 of the Debtor and Creditor Law, containing sections 270 through 281, is New York's version of the Uniform Fraudulent Conveyance Act. The statute makes certain transfers fraudulent as to creditors on the insolvency of a grantor without regard to intent. *Id.* §§ 273, 274. In other cases, transfers made with intent to impede or defeat creditors are condemned as fraudulent. *Id.* §§ 275, 276. Further, as to the argument that the transfer is void ab initio, it is stated in 24 N.Y.Jur., Fraudulent Conveyances, § 86:

> While conveyances in fraud of creditors have been declared "void" in judicial decisions and in statutory provisions governing fraudulent conveyances, the word "void" in such statutory provisions has been generally construed to mean "voidable," and "voidable" only at the instance and option of those who are within the meaning of the expression "creditors and others" or "purchasers." In other words, as to defrauded creditors, the conveyance or transfer is not void ab initio, but voidable only at their election.

*See, also, TGW Realties, Inc. v. Long Island Bird Store, Inc.,* 151 Misc. 918, 272 N.Y.S. 602 (1934). Not having proceeded under the Debtor and Creditor Law in the first instance, Liberty has no remedy under that statute at this stage, subsequent to the debtors' petition under Chapter 7.

## II.

At common law, a judgment did not create a lien against the judgment debtor's real property. Except as provided by statute, a judgment is never a lien against property of the judgment debtor. *Suffolk County Federal Savings and Loan Association v. Geiger,* 57 Misc.2d 184, 291 N.Y.S.2d 982 (1968). In New York, judgments are afforded lien status by virtue of the provisions of N.Y.Civ.Prac.Law & R., § 5203 (McKinney 1978) and not by the Debtor and Creditor Law. What is subjected to the lien of a judgment is the "interest of the judgment debtor in real property, against which a money judgment may be enforced." § 5203(a). The question, then, is whether the Paolinis had such an interest in the fraudulently conveyed realty on January 25, 1980, the date Liberty's judgment was docketed. It is clear that, even though we assume a fraudulent conveyance by the Paolinis, such a conveyance was effective to divest *them* of all interest in the residence. A conveyance in fraud of creditors vests both legal and equitable title in the grantee. *Zim v. Cohen,* 221 App.Div. 341, 223 N.Y.S. 424 (1927). The transferee becomes vested with such ownership and title as the transferor possessed and purported to convey. 24 N.Y.Jur., Fraudulent Conveyances § 91. Moreover, the fraudulent transferee has such interest that he or she can pass good title to a bona fide purchaser. *Id.* § 97. *See, also,* Debtor and Creditor Law § 278. It is evident that on January 25, 1980, the Paolinis did not possess an interest in the realty as described in N.Y. Civ.Prac.Law & R. § 5203 (McKinney 1978), and that Liberty's judgment could not at that date constitute a lien on the property.

Turning finally to the provisions of the Bankruptcy Code, it is clear that "transfer" as used in section 547 (11 U.S.C. § 547) includes "fixing a lien upon property." *See,* 2 Collier on Bankruptcy (15th ed.) ¶ 101.40. For the purposes of section 547 of the Code, the time at which a transfer occurs is equated with perfection of that transfer as against a bona fide purchaser. Section 547(e)(1)(A) provides:

§ 547. Preferences.

. . . .

(e)(1) For the purposes of this section—
(A) a transfer of real property other than fixtures, but including the interest of a seller or purchaser under a contract for the sale of real property, is perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee.

Clearly, then, the "transfer" occurred on May 16, 1980, the only point at which Liberty's interest was superior to that of a purchaser in good faith. The transfer, therefore, is voidable by the trustee.

Liberty seems to feel that it is the reconveyance to the debtors on the eve of bankruptcy which has defeated Liberty's interest. While it will afford little solace, it should be pointed out that had the property not been reconveyed to the debtors, Liberty would have been in no better position than they now find themselves. If such were the case, the right to avoid the conveyances in fraud of creditors would have passed to the trustee by virtue of 11 U.S.C. § 544(b). The transfer then avoided would have been preserved for the benefit of the estate by virtue of 11 U.S.C. § 551. The operation of these statutes would effectively prevent the lien of Liberty's judgment from attaching to the realty. *See, Moore v. Bay*, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133 (1931).

### III.

The lien of the judgment having been avoided, the ultimate question is the entitlement of the debtors to claim an exemption in the residential property. While their pre-petition transfers smack of impropriety, they had restored their property to its former status before the filing of their petition and undoubtedly avoided an objection to their discharge under section 727 of the Code. The Court is unaware of any grounds upon which the debtors may be denied their right to an exemption under section 522(d)(1) of the Code, nor has any been brought to the Court's attention.

Concerning that point in time at which certain rights and interests are fixed in a bankruptcy case, the Supreme Court has stated:

When the law speaks of property which is exempt and of rights to exemptions, it, of course, refers to some point of time. In our opinion this point of time is the one as of which the general estate passes out of the bankrupt's control, and with respect to which the status and rights of the bankrupt, the creditors, and the trustee in other particulars are fixed. The provisions before cited show—some expressly and others impliedly—that one common point of time is intended, and that it is the date of the filing of the petition.

*White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 104, 69 L.Ed. 301 (1924). As it appears from the record that the transfer avoided by the trustee creates adequate equity in the realty to which the claimed exemptions may attach, the exemptions will be allowed in the amount claimed pursuant to the provisions of section 522(c) and (g) of the Code.

Submit order.