In re Randy S. PREVIS, a single man, d/b/a R.S. Previs Enterprises, Debtor.

Warren Lief ERICKSON, Trustee in Bankruptcy for the Estate of Randy S. Previs, Plaintiff,

v.

GRUBB & ELLIS COMMERCIAL BROKERAGE COMPANY; Deyong Property Management, Ltd., a foreign corporation; and Joel Kerbel, Defendants.

Bankruptcy No. 80–00377.
Adv. No. A82–1042.

United States Bankruptcy Court,
W.D. Washington,
at Seattle.

May 23, 1983.

---

Gayle E. Bush, Smith, Jones & Bush, Seattle, Wash., for Warren L. Erickson, Trustee.

James G. Kibble, Garvey, Schubert, Adams & Barer, Seattle, Wash., for Grubb & Ellis Commercial Brokerage Co.

Camille Taylor Ralston, Montgomery, Purdue, Blankenship & Austin, Seattle, Wash., for Deyong Property Management, Ltd. and Joel Kerbel.

## MEMORANDUM OPINION

KENNETH S. TREADWELL, Bankruptcy Judge.

The Court has before it for determination a dispute over priority of interests in certain real property between a Trustee, who has recovered a fraudulent transfer of the real property, and creditors who allegedly obtained judgment liens against the property subsequent to its fraudulent transfer.

### I. PLEADINGS

On August 24, 1982, plaintiff as Trustee of the estate of the above named debtor filed an action in Bankruptcy Court against Grubb & Ellis Commercial Brokerage Company ("Grubb & Ellis"), Deyong Property Management, Ltd. ("Deyong") and Joel Kerbel ("Kerbel") seeking sale of real property free and clear of liens and adjudication of the validity of liens.

On February 4, 1983, the Trustee filed a motion and accompanying affidavit seeking partial summary judgment authorizing distribution of $22,787.26 to the Trustee out of the sale of the below described real property. The defendants opposed this motion.

On February 25, 1983, a Pre-Trial Order was entered in this matter.

On March 22, 1983, the Trustee filed a motion for an order of summary judgment declaring the rights of the Trustee superior to the rights of the defendants in the below described real property.

On April 5, 1983, the defendants filed a counter motion for summary judgment with respect to the priority of their rights as against the Trustee.

## II. FACTS

As set forth in the Pre-Trial Order and as stipulated by the parties in open Court at the hearing held herein on May 17, 1983, the following facts stand uncontroverted.

On October 15, 1979, a judgment in favor of Grubb & Ellis was entered against Randy S. Previs ("Debtor") in the Superior Court of King County.

On October 23, 1979, a Quit Claim Deed describing certain real property owned by the Debtor located in Jefferson County, Washington (hereinafter "subject property") showing Debtor as grantor, and John I. Previs ("Debtor's father") as grantee was recorded in Jefferson County.

On October 29, 1979, an abstract of the judgment in favor of Grubb & Ellis against the Debtor was filed and recorded in Jefferson County.

On January 30, 1980, an abstract of a judgment in favor of Deyong & Kerbel against the Debtor was filed and recorded in Jefferson County.

On February 25, 1980, the Debtor filed a petition in this Court under Chapter 11 of the Bankruptcy Code.

On April 18, 1980, plaintiff was appointed Trustee of the Debtor's estate.

On October 6, 1980, in response to a demand by plaintiff, Debtor's father gave a

Quit Claim Deed to the subject property to the Debtor. This deed was recorded in Jefferson County by the Debtor on October 16, 1980.[1]

All parties to this action have stipulated that the conveyance of the deed to the subject property from the Debtor to his father was fraudulent.

The Pre-Trial Order stipulates that in each of the years 1980 and 1981 the Trustee paid $8555.04 owed by the Debtor to a contract vendor on the subject property. The Trustee borrowed funds to meet the 1981 payment and has incurred interest thereby in the amount of $3,092.18 as of February 25, 1983.

## III. LAW

■ Preliminarily, the Court notes that it is mindful that the mere fact that the parties make cross-motions for summary judgment does not necessarily mean that there are no disputed issues of material fact and does not necessarily permit the Court to render judgment in favor of one side or the other. *Starsky v. Williams,* 512 F.2d 109, 112 (9th Cir.1975). However, here the parties by way of pre-trial order and additional stipulations have placed the case in such a posture that this Court is not able to discern the existence of a dispute as to material fact and is therefore able to rule as a matter of law.

Several legal issues have been raised by the parties, as follows:

### A. *Statute of Limitations.*

■ The defendants argue that the Trustee has not commenced an action or proceeding under Code § 548 to avoid the fraudulent transfer from the Debtor to his father within two years of appointment as Trustee as required by 11 U.S.C. § 546(a)(1).[2] Although the Trustee was

---

**1.** Randy Previs, individually, has not been made a party to this action, and the Court therefore does not now adjudicate any right or title he may have with respect to the subject property.

**2.** Section 546(a) provides:

An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
(1) two years after the appointment of a trustee under section 702, 1104, 1163, or 1302 of this title; and
(2) the time the case is closed or dismissed.

able to obtain return of the subject property from the fraudulent transferee as a result of a letter demanding return of the property, the defendants argue that the letter does not constitute an "action or proceeding" within the terms of § 546(a). The Court believes that the defendants' interpretation of the statute exalts form over substance. Where the Trustee may accomplish the recovery of a fraudulent transfer by letter, there is simply no need for a formal action or proceeding.[3] A requirement of a formal action would be contrary to the policy of the Code "which encourages trustees to act diligently and expeditiously." *In re Eldridge,* 15 B.R. 594, 595 (Bkrtcy.S.D.N.Y.1981). Moreover, the statute by its terms does not require that a formal action or proceeding be brought, but states in essence that if a lawsuit or contested matter be commenced, it must be done so within a certain time frame.

### B. *Code § 551.*

■ The Trustee states correctly that once he has recovered property which has been fraudulently transferred, that transfer is automatically preserved for the benefit of the estate under Code § 551. The Trustee argues that application of that section here has the effect of subrogating the Trustee to the position of the fraudulent transferee and negating the alleged judgment liens recorded subsequent to the recording of the fraudulent transfer. This Court agrees.

Section 551 provides:

Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

Cases which have discussed § 551 point to the Trustee's ability to step into the position of priority held by the recipient of the voided transfer. See, e.g., *In re Steele,* 27 B.R. 474 (Bkrtcy.W.D.Wis.1983); and *In re Appalachian Energy Industries, Inc.,* 25

B.R. 515 (Bkrtcy.M.D.Tenn.1982). Although there is an element of unfairness in the result that the Trustee may have the benefit of a fraudulent transfer so as to take priority over judgment lien creditors, as is noted in a leading commentary: "It is doubtful that the court can use its general equitable powers under section 105(a) and 28 U.S.C. §§ 1481 & 1651 to defeat the express language of section 551." 4 *Collier on Bankruptcy* ¶ 551.02, 551–4 (15th ed. 1982). Because Congress specifically included fraudulent transfers recovered under § 548 and § 544(b) within the types of transfers which are to be preserved for the estate under Code § 551, this Court believes that it is compelled to preserve the transfer in question for the benefit of the estate.

### C. *Whether the Defendants Obtained Liens on the Subject Property.*

Even if this Court were to conclude that Code § 551 does not give the Trustee priority over judgment liens attaching subsequent to a fraudulent transfer, the Court cannot conclude in the present case that the defendants obtained liens against the subject property.

■ It has long been decided in Washington that a fraudulent conveyance of land is good as between the parties and passes title, so that a subsequent judgment creditor acquires no lien on the land thus fraudulently conveyed, for the reason that no interest in such land remains in the grantor upon which a judgment lien can attach. See *Preston-Parton Mill Co. v. Dexter Horton & Co.,* 22 Wash. 236, 60 P. 412 (1900); *Sawtelle v. Weymouth,* 14 Wash. 21, 43 P. 1101 (1896). The Uniform Fraudulent Conveyance Act, as enacted in Washington in 1945 (RCW 19.40) does not change the case law as applied under the facts of this case. However, the defendants argue that they acquired judgment liens under RCW 19.40.-090(1) which provides:

(1) Where a conveyance or obligation is fraudulent as to a creditor, such credi-

---

**3.** The Trustee also may be deemed to have proceeded under the state fraudulent conveyance statutes, RCW 19.40. Cf. Code § 544(b).

tor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser.

(a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

(b) Disregard the conveyance and attach or levy execution upon the property conveyed.

The defendants assert that it is enough for them to "disregard the conveyance" under subpart (b) and do nothing further but record their judgments. However, that subpart requires judgment creditors to take further action to "attach or levy execution upon the property conveyed." Here the defendants have taken neither action. Accordingly, the defendants cannot be deemed to have obtained liens upon the subject property.[4]

D. *Trustee's Costs of Preserving the Subject Property.*

■ The Trustee seeks reimbursement of $22,787.26 as reasonable and necessary expenditures for the preservation of property in which the estate has an interest. Pursuant to Code § 1108, the Trustee is authorized to operate the Debtor's business unless the Court orders otherwise.[5] Pursuant to Code § 503(b)(1)(A) this Court may allow, after notice and hearing, administrative expenses including "the actual, necessary costs and expenses of preserving the estate...." This Court finds that the Trustee properly incurred the above described costs in order to protect any potential equity of the estate and to avoid potential relief from stay, forfeiture and quiet title litigation by the contract vendor.

For these reasons, even if the defendants were to have valid lien rights against the subject property, which this Court does not find, the Trustee would be entitled to recoup his expenditures with respect to the property under Code § 506(c) and principles of equitable subrogation.

Code § 506(c) provides that

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

The alleged judgment lienors benefited as a result of the Trustee's avoidance of potential forfeiture. Thus, were their secured claims against the subject property to be allowed herein, the Trustee, having incurred reasonable, necessary expenses of preserving and disposing of the property by sale free and clear of liens, may be reimbursed for his expenses.

■ Similarly, the state law doctrine of equitable subrogation would provide ample basis for recoupment of the Trustee's expenses. Subrogation is a purely equitable doctrine, a fiction invented for the purpose of achieving an obviously equitable result. *Omicron Co. v. United States Fidelity & Guaranty Co.*, 21 Wash.2d 703, 708, 152 P.2d 716 (1944):

"It is founded in the facts and circumstances of each particular case and on the principles of natural justice. In general, it will be applied wherever any person, other than a mere volunteer, will suffer damage because of the unjust enrichment of another. The doctrine, however, will not be applied if it would work injustice to the rights of those having equal or superior equities; ..."

*Credit Bureau Corp. v. Beckstead*, 63 Wash.2d 183, 385 P.2d 864 (1963). Here, as previously noted, the defendants benefited

---

**4.** This Court notes, but chooses not to follow, *Lawson v. Liberty National Bank and Trust Co.*, 18 B.R. 384 (W.D.N.Y.1982) (reversing *In re Paolini*, 11 B.R. 317 (Bkrtcy.W.D.N.Y.1981)).

**5.** The Debtor's case was converted from Chapter 11 to Chapter 7 on March 26, 1982. The

Trustee has continued to serve under the latter chapter. The expenses for which the Trustee seeks reimbursement concern and arose out of the 1980 and 1981 payments to the contract vendor of the subject property.

by the Trustee's contract payments. If they were to have liens superior to the Trustee's interests (which the Court does not find) they would be unjustly enriched under the circumstances of this case by the Trustee's actions in avoidance of potential forfeiture by the contract vendor.

## CONCLUSION

Based on the foregoing, orders will be entered by this Court allowing the Trustee's motions for partial summary judgment as to reimbursement and for summary judgment as to priority of rights in the subject property.