FILED
COURT OF APPEALS
DIVISION II

2015 JUL 21 AM 9:28

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AMERICA'S CREDIT UNION f/n/a FORT LEWIS COMMUNITY FEDERAL CREDIT UNION, | No. 46200-1-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| COUNTRYWIDE HOME LOANS, INC., | |
| Appellant, | |
| And | |
| CHARLES D. SHELTON and KATHRYN E. SHELTON, husband and wife; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., as nominee for Countrywide Home Loans, Inc.; LIENHOLDERS 1 through 10, | |
| Defendants. | |

BJORGEN, A.C.J. — In 2012, Charles and Kathryn Shelton defaulted on a loan from America's Credit Union (ACU), formally known as Fort Lewis Community Federal Credit Union. The default prompted ACU to file suit to foreclose its mortgage on real property the

Sheltons had pledged as security for the loan. That suit prompted a dispute between ACU and Countrywide Home Loans Inc. (Countrywide) as to which lending institution had the senior secured interest in the Sheltons' property, and the parties filed cross motions for summary judgment on the issue. ACU argued it had the senior interest based on Washington's recording statute, RCW 65.08.070. Countrywide argued that the doctrine of equitable subrogation gave it a secured interest senior to ACU's mortgage, because Countrywide had made a refinancing loan to the Sheltons, which paid off another, prior loan that was secured by a recorded deed of trust senior to ACU's mortgage. The trial court resolved the cross motions for summary judgment by denying Countrywide's, granting ACU's, and declaring ACU to have the senior secured interest in the Sheltons' property.

Countrywide appeals, contending that the trial court erred by (1) refusing to apply the doctrine of equitable subrogation and (2) refusing to equitably subrogate it to the total value of the refinancing loan it made to the Sheltons. We agree with Countrywide that it was entitled to equitable subrogation, giving it the senior secured interest on the Sheltons' real property. But we disagree that Countrywide was entitled to equitable subrogation on any amount greater than the then-existing amount owed on the note secured by the deed of trust originally senior to ACU's mortgage. We therefore reverse the trial court's grant of summary judgment in favor of ACU to the extent it held that Countrywide was not equitably subrogated to the senior deed of trust and remand with orders to enter summary judgment for Countrywide declaring it to be equitably subrogated to Bank of America's (BOA) senior deed of trust on that property securing a debt of $87,255.38.

FACTS

In 1994, the Sheltons borrowed approximately $98,000 from Knutson Mortgage Corporation. The loan was secured by a deed of trust on property the Sheltons owned in DuPont, Washington.[1] BOA later acquired the note for the loan, as well as the associated deed of trust.

In 2000, the Sheltons again borrowed, this time from ACU. They opened a home equity revolving line of credit secured by a mortgage on their DuPont property. This mortgage secured the Sheltons' debt up to $40,000 and noted that ACU's loan to the Sheltons "will be of a revolving nature and may be made, repaid, and remade from time to time" because the parties "contemplate[d] a series of advances to be secured by" the mortgage. Clerk's Papers (CP) at 11.

In 2002, the Sheltons refinanced their DuPont property with Countrywide. This refinancing loan was also secured by a deed of trust on the DuPont property.

The Sheltons used money from the refinancing loan to pay BOA the balance of the Knutson loan, $87,225.38. As part of the transaction, BOA reconveyed the deed of trust granted by the Sheltons to secure the original Knutson loan to Countrywide.

The Sheltons also used the refinancing loan to pay ACU the $38,934.93 balance then-existing on the home equity line of credit. However, neither the Sheltons nor Countrywide asked ACU to close the line of credit, cancel its mortgage, or agree to subordinate its mortgage as part of the transaction. Accordingly, the line of credit remained open and the Sheltons continued to draw on it, owing at the time of ACU's complaint over $30,000 to ACU. The ACU mortgage

---

[1] A deed of trust "'is a form of a mortgage.'" *Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 92, 285 P.3d 34 (2012) (quoting 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASH. PRACTICE: REAL ESTATE: TRANSACTIONS § 17.3, at 260 (2d ed. 2004)).

also remained and, given the release of BOA's deed of trust due to the refinancing, ACU had become the senior secured interest in the DuPont property.

In 2012, the Sheltons defaulted on the loan from ACU.[2] ACU filed a complaint seeking, as relevant here, (1) a judgment for the balance of the loan to the Sheltons, (2) "an order adjudging [ACU's] mortgage to be the first and paramount lien" on the DuPont property and extinguishing any other interest, claim, and encumbrance on the property, and (3) an order allowing a foreclosure sale to satisfy ACU's mortgage. CP at 4. The complaint named Countrywide as a party with an interest in the DuPont property junior to ACU's.

Countrywide answered, contending that ACU did not have the senior interest in the DuPont property. In its later motion for summary judgment, Countrywide contended that, under the doctrine of equitable subrogation, it stepped into BOA's shoes and could enforce the senior deed of trust that had secured the Knutson loan. In its motion, Countrywide also contended that the trial court should subrogate it to a first position security interest on the entirety of the refinancing loan, meaning essentially that it would step into the shoes of both BOA and ACU.

ACU filed its motion for summary judgment, contending that the trial court should not apply the doctrine of equitable subrogation. ACU argued that Washington's recording statute[3] gave it the senior secured interest and that the court should not depart from that result for two reasons. First, ACU contended that equitable subrogation existed to prevent unjust enrichment and the value of the DuPont property sufficed to pay the first and second position secured interests, meaning that no unjust enrichment occurred. Second, ACU contended that equitable

---

[2] The Sheltons had refinanced again in 2006. Neither party contends that this refinancing affected the issues before us, and we do not address that refinancing further.
[3] RCW 65.08.070.

subrogation, as an equitable doctrine, should not apply because it had not acted inequitably. With regard to Countrywide's request that the trial court equitably subrogate it to the full extent of the refinancing loan, ACU contended that Countrywide could not do anything other than step into BOA's shoes, meaning the trial court could only subrogate it to first position on the value of the note at the time of the refinancing.

The trial court granted ACU's motion for summary judgment and denied Countrywide's. Countrywide appeals.

## ANALYSIS

### I. STANDARD OF REVIEW

We review a trial court's grant of summary judgment de novo, performing the same inquiry as the trial court. *Lakey v. Puget Sound Energy, Inc.*, 176 Wn.2d 909, 922, 296 P.3d 860 (2013). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine material issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Atherton Condo. Apt.-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We view the evidence and all reasonable inferences drawn from that evidence in the light most favorable to the nonmoving party for purposes of determining whether a material issue of fact exists. *Lakey*, 176 Wn.2d at 922.

We review de novo the propriety of equitable relief, such as the application of the doctrine of equitable subrogation. *Bank of Am., N.A. v. Prestance Corp.*, 160 Wn.2d 560, 564, 160 P.3d 17 (2007).

## II. EQUITABLE SUBROGATION

Washington has adopted in full the *Restatement (Third) of Property: Mortgages* section 7.6 (1997). *Columbia Cmty. Bank v. Newman Park, LLC*, 177 Wn.2d 566, 583, 304 P.3d 472 (2013); *Prestance Corp.*, 160 Wn.2d at 561-62. That section of the *Restatement (Third) of Property*, which describes equitable subrogation, provides that

> (a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.
> (b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:
>
> . . .
>
> (4) upon a request from the obligor or the obligor's successor to do so, if the person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6.

Under *Restatement (Third) of Property* section 7.6, equitable subrogation does two things when a refinancing lender pays off a note secured by a mortgage in real property. First, equitable subrogation preserves the mortgage even though the refinancing pays the note the mortgage secures. RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6(a), (b). Second, equitable subrogation assigns that mortgage to the refinancing lender for enforcement. RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6(a), (b). Simply put, equitable subrogation allows a refinancing lender to step into the shoes of the original lender, securing the refinancing loan to the same extent the original lender's mortgage secured its loan and giving the refinancing

lender the same creditor priority the original lender possessed. *Columbia Cmty. Bank*, 177 Wn.2d at 573; *see* RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6 cmt. a.

Equitable subrogation "remains 'an equitable remedy' . . . 'founded in the facts and circumstances of each particular case.'" *Columbia Cmty. Bank*, 177 Wn.2d at 581 (quoting RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6 cmt. a; *Credit Bureau Corp. v. Beckstead*, 63 Wn.2d 183, 186, 385 P.2d 864 (1963)). Nevertheless, Washington's Supreme Court has twice in recent years stated that policy reasons and judicial economy require a liberal application of the doctrine of equitable subrogation. *Columbia Cmty. Bank*, 177 Wn.2d at 580-81; *Prestance*, 160 Wn.2d at 580-82.

A.  Subrogation to Bank of America's Secured Debt of $87,225.38

We hold that the trial court erred when it denied Countrywide's motion for summary judgment on the issue of equitably subrogating it to BOA's first position mortgage on the $87,225.38 Countrywide paid BOA in the refinancing.

No genuine issues of material fact exist on the elements of equitable subrogation as defined in *Restatement (Third) of Property* section 7.6 and adopted by Washington's Supreme Court. Countrywide performed the Sheltons' obligation to pay BOA, an obligation secured by the deed of trust on the DuPont property. Subrogation is appropriate to prevent unjust enrichment. Countrywide performed for the Sheltons at their request, Countrywide was promised repayment by the Sheltons, and Countrywide reasonably expected to receive a security interest in the real estate with the priority of the BOA mortgage. Subrogating Countrywide to BOA's status as the senior secured creditor on the obligation owed at the time of the refinancing will not prejudice ACU; it remains the junior secured creditor in the exact position it would have been in but for Countrywide's payment of the loan from BOA. The facts here are exactly the

7

type where equitable subrogation "should" apply. *Prestance*, 160 Wn.2d at 581. Viewing the evidence in the light most favorable to the nonmoving party, summary judgment for Countrywide was appropriate, and the trial court erred by refusing to grant it.

Nevertheless, ACU argues that equitable subrogation remained unavailable to Countrywide for two reasons. First, ACU contends that equitable subrogation, as a derogation of the recording statute, should be limited to "[e]xtreme [f]actual [c]ircumstances." Br. of Resp't at 8. Second, ACU contends that a refusal to apply the doctrine of equitable subrogation would not unjustly enrich it, because the DuPont property has sufficient value to satisfy both the first and second position liens. We find both of these arguments unpersuasive.

ACU's first argument is at odds with the text of *Restatement (Third) of Property* section 7.6 and statements by our Supreme Court in *Prestance* and *Columbia Community Bank*. First, while ACU would limit equitable subrogation to cases involving "misrepresentation, mistake, duress, undue influence or deceit," Brief of Respondent at 11, *Restatement (Third) of Property* section 7.6(b)(4) provides that equitable subrogation is appropriate under the factual circumstances of a refinancing transaction and does not condition equitable subrogation on the presence of the types of inequities to which ACU would limit it. Second, the Supreme Court has rejected ACU's premise that equitable subrogation runs against Washington's recording statute. The court has adopted the view that equitable subrogation "maintains the proper scheme and the original priorities" by ensuring that junior creditors remain junior creditors. *Prestance*, 160 Wn.2d at 564-65, 570-71. Thus, equitable subrogation acts in conformity with, not in derogation of, the statutory recording scheme.

ACU's second argument fails, because it misunderstands the nature of the unjust enrichment avoided by applying the doctrine of equitable subrogation in mortgage refinancing transactions. The refinancing pays off the former senior creditor, which, without subrogation, would release its security interest and promote the former junior creditor. This promotion, which the junior creditor did nothing to bring about, is "an unwarranted and unjust windfall." RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6 cmt. a; *Columbia Cmty. Bank*, 177 Wn.2d at 575. The promotion itself is the unjust enrichment equitable subrogation is intended to avoid, not the consequent possibility of financial gain. *See* RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6 cmt. a.

B.      Subrogation to ACU's Secured Debt of $38,934.93

We disagree, however, with Countrywide's contention that it is also entitled to equitable subrogation to the first position lien on the $38,934.93 it paid ACU as part of the refinancing loan to the Sheltons. The basis for Countrywide's belief that it is entitled to equitable subrogation on this amount is not apparent from its briefing, but Countrywide appears to ask us either to expand the amount secured by BOA's original senior interest or to subrogate Countrywide to ACU's secured interest, displacing ACU. Neither is appropriate.

To the extent that Countrywide asks us to subrogate it to BOA's secured interest on an amount greater than that secured by the deed of trust, we must reject the request. In the context of mortgage refinancing, equitable subrogation allows the refinancing lender to step into the shoes of the senior creditor "to the extent of the former lienholder's interest at th[e] time" of the refinancing. *Columbia Cmty. Bank*, 177 Wn.2d at 575; RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6 cmt. e. Doing otherwise would prejudice the junior creditors, who did not bargain to be a junior to anything other than the original senior interest. *See* RESTATEMENT (THIRD) OF

PROPERTY, *supra*, § 7.6 cmt. e. Subrogating Countrywide to any amount greater than the $87,225.38 owed to BOA would impermissibly prejudice ACU. RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6(e).

To the extent that Countrywide asks that we equitably subrogate it to ACU's mortgage, we likewise reject the request based on the facts of this case. The Sheltons had a revolving credit mortgage with ACU. The terms of the mortgage contemplate that the Sheltons would borrow, pay down their balance, borrow again, and so on. Given that state of affairs, Countrywide needed to do something to alert ACU to its position that it, Countrywide, was equitably subrogated to the full, continuing extent of the refinancing loan from ACU. Without that, ACU had no notice that its security for the continuing home equity line of credit was impaired and that it should take action to avoid loss to itself.

The record shows only that Countrywide, in a letter, mentioned a reconveyance fee. The evidence also shows that reconveyance fees were irrelevant to the ACU mortgage and that ACU received no request to cancel the mortgage. Under those facts, we cannot say that Countrywide took the steps necessary to allow ACU to protect itself. Equitably subrogating Countrywide to ACU's secured interest, which would displace ACU from security it believed it had, would be inequitable. *Cf. Columbia Cmty. Bank*, 177 Wn.2d at 581 (quoting RESTATEMENT (THIRD) OF PROPERTY, *supra*, § 7.6 cmt. a; *Credit Bureau Corp.*, 63 Wn.2d at 186; *People's Sav. Bank v. Bufford*, 90 Wn.2d 204, 208, 155 P. 1068 (1916)).

## CONCLUSION

We reverse summary judgment in favor of ACU to the extent the trial court held that Countrywide was not equitably subrogated to BOA's senior deed of trust on the Sheltons' DuPont property. We remand with orders to enter summary judgment for Countrywide declaring

it to be equitably subrogated to BOA's senior deed of trust on that property securing a debt of $87,255.38.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, A.C.J.

We concur:

LEE, J.

SUTTON, J.